Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Charles H. Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Pavithra Rajesh (SBN 323055)
  *prajesh@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Michael Sookdeo*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SOOKDEO, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>      v.<br><br>HIMS & HERS HEALTH, INC., ANDREW DUDUM, and OLUYEMI OKUPE,<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Michael Sookdeo ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Hims & Hers Health, Inc. ("Hims" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Hims; and (c) review of other publicly available information concerning Hims.

## NATURE OF THE ACTION AND OVERVIEW

1.     This is a class action on behalf of persons and entities that purchased or otherwise acquired Hims securities between April 29, 2025 and June 22, 2025, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Hims operates a telehealth platform that connects consumers to licensed healthcare professionals. The Company's platform offers a range of curated prescription and non-prescription health and wellness products and services available to purchase on its websites and mobile application directly by customers. In May 2024, the Company began providing access to compounded injectable semaglutide, a glucagon-like peptide-1 receptor agonist (GLP-1), used for weight loss.

3.     On April 29, 2025, Hims announced a long-term collaboration with Novo Nordisk, starting with the immediate sale of "a bundled offering of Novo Nordisk's FDA-approved Wegovy® on the Hims & Hers platform."

4.     On June 23, 2025, before the market opened, Novo Nordisk issued a press release announcing that it was terminating its partnership with Hims, "***based on Hims & Hers deceptive promotion and selling of illegitimate, knockoff versions of Wegovy® that put patient safety at risk.***"[1] The press release stated that Hims "***has failed to adhere to the law which prohibits mass***

---

[1] Unless otherwise stated, all emphasis in bold and italics herein is added.

*sales of compounded drugs under the false guise of 'personalization.'*"  The press release further stated "[b]ased on Novo Nordisk's investigation, the 'semaglutide' active pharmaceutical ingredients that are in the knock-off drugs sold by telehealth entities and compounding pharmacies are manufactured by foreign suppliers in China"  which " FDA has never authorized or approved" and which may contain "unsafe and illicit foreign ingredients."

5.    On this news, the Company's share price fell $22.24, or 34.6%, to close at $41.98 per share on June 23, 2025, on unusually heavy trading volume.

6.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Hims was engaged in the "deceptive promotion and selling of illegitimate, knockoff versions of Wegovy® that put patient safety at risk;" (2) that, as a result, there was a substantial risk that the Company's collaboration with Novo Nordisk would be terminated; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in

substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

11.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

12.    Plaintiff Michael Sookdeo, as set forth in the accompanying certification, incorporated by reference herein, purchased Hims securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.    Defendant Hims is incorporated under the laws of Delaware with its principal executive offices located in San Francisco, California. Hims's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "HIMS."

14.    Defendant Andrew Dudum ("Dudum") was the Company's Chief Executive Officer ("CEO") at all relevant times.

15.    Defendant Oluyemi Okupe ("Okupe") was the Company's Chief Financial Officer ("CFO") at all relevant times.

16.    Defendants Dudum and Okupe (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive

1   representations which were being made were then materially false and/or misleading.    The

2   Individual Defendants are liable for the false statements pleaded herein.

3                              **SUBSTANTIVE ALLEGATIONS**

4                                        **Background**

5          17.     Hims & Hers Health, Inc. operates a telehealth platform that connects consumers to

6   licensed healthcare professionals. The Company's platform offers a range of curated prescription

7   and non-prescription health and wellness products and services available to purchase on its websites

8   and mobile application directly by customers. In May 2024, the Company began providing access

9   to compounded injectable semaglutide, a glucagon-like peptide-1 receptor agonist (GLP-1), used

10  for weight loss.

11                              **Materially False and Misleading**

12                     **Statements Issued During the Class Period**

13         18.     The Class Period begins on April 29, 2025. On that date, Hims issued a press release

14  which announced a long-term collaboration with Novo Nordisk, starting with the immediate sale of

15  "a bundled offering of Novo Nordisk's FDA-approved Wegovy® on the Hims & Hers platform."

16  Specifically, the press release stated as follows, in relevant part:

17      **Hims & Hers and Novo Nordisk Team Up to Expand Affordable Access to Care**

18                          *                   *                   *

19      *A bundled offering of Novo Nordisk's FDA-approved Wegovy® on the Hims & Hers*
        *platform marks the first step in a long-term collaboration roadmap, pairing*
20      *innovative treatments with a leading care platform to elevate the impact of obesity*
        *care for today's consumer.*
21
        Hims & Hers Health, Inc. today announced a long-term collaboration with Novo
22      Nordisk designed to make proven obesity care and treatments more accessible, more
        affordable, and more connected for millions of Americans.
23
        ***As a first step, Americans can now access NovoCare® Pharmacy directly through***
24      ***the Hims & Hers platform, with a bundled offering of all dose strengths of***
        ***Wegovy® and a Hims & Hers membership, which includes access to 24/7 care,***
25      ***ongoing clinical support, and nutrition guidance, all in one place. At a single,***
        ***unified price starting at 599 USD per month, individuals may be prescribed***
26      ***Wegovy®, alongside Hims & Hers' world-class, holistic approach to care, powered***
        ***by today's technology. The offering is available this week on the Hims & Hers***
27      ***platform.***

28

The companies are also developing a roadmap that combines Novo Nordisk's innovative treatments with Hims & Hers' ability to scale access to quality care, aiming to improve long-term outcomes for more people, more affordably.

*                    *                    *

***This new offering builds on Hims & Hers' existing suite of weight loss solutions and provides access to all dose strengths of Wegovy® in a high-quality pen for self-pay patients.*** The platform will continue to offer access to other medications, oral kits, protein, nutrition kits, and clinically-backed care plans, giving patients more ways to start and sustain their health journey based on their needs, goals, and eligibility.

19.     On May 5, 2025, Hims issued a press release announcing its results of operations for the quarter ended March 31, 2025.  The press release touted the Company's financial results including an accelerated subscriber growth trajectory, as follows in relevant part:

**Hims & Hers Health, Inc. Reports First Quarter 2025 Financial Results**

*Revenue of $586.0 million, up 111% year-over-year in Q1 2025*

*Net income of $49.5 million; Adjusted EBITDA of $91.1 million in Q1 2025*

*Subscribers grew to 2.4 million, up 38% year-over-year in Q1 2025*

*Affirms full year 2025 revenue guidance of $2.3 billion to $2.4 billion and raises Adjusted EBITDA guidance to a range of $295 million to $335 million*

*Introduces 2030 targets of at least $6.5 billion in revenue and $1.3 billion in Adjusted EBITDA*

*                    *                    *

**Key Business Metrics**
*(In Thousands, Except for Monthly Online Revenue per Average Subscriber, Unaudited)*

|  | Three Months Ended March 31, | | |
|---|---|---|---|
|  | 2025 | 2024 | % Change |
| Subscribers (end of period) | 2,366 | 1,709 | 38 % |
| Monthly Online Revenue per Average Subscriber | $       84 | $       55 | 53 % |

**Revenue**
*(In Thousands, Unaudited)*

|  | Three Months Ended March 31, | | |
|---|---|---|---|
|  | 2025 | 2024 | % Change |
| Online Revenue | $576,361 | $267,761 | 115 % |
| Wholesale Revenue | 9,649 | 10,410 | (7)% |
| Total revenue | $586,010 | $278,171 | 111 % |

**First Quarter 2025 Financial Highlights**

•Revenue was $586.0 million for the first quarter of 2025 compared to $278.2 million for the first quarter of 2024, an increase of 111% year-over-year.

•Gross margin was 73% for the first quarter of 2025 compared to 82% for the first quarter of 2024.

•Net income was $49.5 million for the first quarter of 2025 compared to $11.1 million for the first quarter of 2024.

•Adjusted EBITDA was $91.1 million for the first quarter of 2025 compared to $32.3 million for the first quarter of 2024.

•Net cash provided by operating activities was $109.1 million for the first quarter of 2025 compared to $25.8 million for the first quarter of 2024.

•Free Cash Flow was $50.1 million for the first quarter of 2025 compared to $11.9 million for the first quarter of 2024.

20.    On May 5, 2025, Hims issued a shareholder letter concerning the results of operations for the quarter ended March 31, 2025. The shareholder letter affirmed the previously reported financial results and touted the Company's partnership with Novo Nordisk alongside the Company's purportedly "personalized semaglutide dosage" offerings, as follows in relevant part:

| Key Financial Highlights | Q1 2025 Q1 2024 | Growth |
|---|---|---|
| Revenue | $586M $278M | 111% YoY |
| Net Income | $49M $11M | 345% YoY |
| Adj. EBITDA* | $91M $32M | 182% YoY |
| Operating Cash Flow | $109M $26M | 322% YoY |
| Free Cash Flow* | $50M $12M | 321% YoY |
| Subscribers[1] (End of Period) | 2.4M 1.7M | 38% YoY |
| Monthly Online Revenue per Avg. Subscriber[2] | $84 $55 | 53% YoY |

*                          *                          *

**We launched innovative partnerships that set the stage for greater consumer choice within our Weight Loss specialty, providing a blueprint for future specialties**

Enabling consumers to access a breadth of options has been a critical component of our strategy, and has allowed us to establish a leadership position across each of our specialties. Within our Weight Loss specialty, we recently brought more options to current and future subscribers. Oral medication kits and personalized compounded GLP-1s continue to serve our customers well, and with the launch of liraglutide at the end of March, our platform now offers access to the first generic GLP-1. This launch is already seeing early signs of success, providing subscribers previously taking commercially available dosages of semaglutide another option to transition to following the end of the semaglutide shortage.

*Additionally, in April we announced a long-term collaboration with Novo Nordisk to expand affordable access to proven obesity care. As a first step, individuals can now access Wegovy® through the Hims & Hers platform, bundled with access to 24/7 care, clinical support, and nutrition guidance, all at a single, unified price. This collaboration pairs our customer-centric platform with Novo Nordisk's innovative pipeline, allowing us to serve more customers, broaden access to clinically proven treatments, and drive stronger outcomes.* More importantly, beyond this initial launch, we are developing a broader roadmap together with Novo Nordisk, as well as a blueprint for future partnerships, to deliver access to quality care at scale, improve long-term outcomes for people living with chronic disease, and make care more affordable.



21.     On May 5, 2025, Hims issued an investor presentation concerning the results of operations for the quarter ended March 31, 2025. The investor presentation affirmed the previously reported financial results, touted the Company's partnership with Novo Nordisk alongside purportedly "personalized semaglutide dosage" offerings, and further touted the Company's purported manufacturing in "FDA and state regulated facilities and third party testing", as follows in relevant part:



1                    *                    *                    *



22.    On May 5, 2025, the Company submitted its quarterly report for the period ended March 31, 2025 on a Form 10-Q filed with the SEC. The quarterly report affirmed the previously reported financial results and touted the Company's online revenue as driven by personalized GLP-1 doses, as well as the Company's ability to continuing offering access to certain compounded GLP-1s pursuant to applicable FDA regulations, as follows in relevant part:

> We generated $576.4 million in Online Revenue for the three months ended March 31, 2025, an increase of $308.6 million, or 115%, as compared to $267.8 million for the three months ended March 31, 2024. Growth in Online Revenue for the three months ended March 31, 2025 was driven by: (i) new Subscriber growth pertaining to weight loss solutions launched in the fourth quarter of 2023 or later, including new Subscribers for compounded semaglutide glucagon-like peptide-1 receptor agonists ("GLP-1s") offerings launched in the second quarter of 2024 for which there was no comparable revenue for the three months ended March 31, 2024; and (ii) continued sustainable growth in Subscribers pertaining to offerings available in both periods, from whom we generated recurring revenue that was driven in part by ordinary-course marketing campaigns that continued to strengthen our mature offerings. **During the three months ended March 31, 2025, our GLP-1 offerings generated approximately $230 million in Online Revenue, a significant majority of which came from personalized doses.** New Subscriber growth in our GLP-1 offering was driven by both ordinary-course marketing campaigns as well as a specialized marketing campaign as discussed further below. Certain aspects of our GLP-1 compounded offerings were permitted by the Food and Drug Administration ("FDA") based on shortages of branded GLP-1s, which were affected by regulatory decisions during the first quarter of 2025 as further described below. Excluding our GLP-1 offerings, the remaining Online Revenue of approximately $346 million during the period increased nearly 30% year-over-year as a result of new Subscriber growth. During the three months ended March 31, 2025, we aired a Super Bowl

marketing campaign highlighting specialized offerings on our platform and building brand awareness with consumers in order to normalize health and wellness challenges, which resulted in increased traffic to our platform.

Online Revenue can fluctuate on a period-to-period basis due to various factors, including launches of new product offerings, the success of our marketing campaigns, and pricing decisions impacting customer uptake of our offerings, as well as product availability and the regulatory landscape impacting our offerings. As described under Part II, Item 1A: "Risk Factors", on February 21, 2025, the FDA resolved the semaglutide shortage, which has constrained and is expected to continue to constrain our ability to continue providing access to compounded semaglutide on our platform. ***The FDA does not limit compounding to drug shortages, and we believe there are paths to continue offering access to certain compounded GLP-1s after the period of FDA enforcement discretion has ended following resolution of the shortage, consistent with the statutory exemptions from the new drug approval requirements. As such, we intend to continue expanding our weight loss offerings and serving our Subscribers with a wide range of weight loss solutions.***

23.     On May 22, 2025, the Company issued a press release announcing an additional Wegovy® semaglutide offering in partnership with Novo Nordisk. The press release stated as follows in relevant part:

**Hims & Hers Introduces 6-Month Wegovy® New Customer Offer**

\*                        \*                        \*

SAN FRANCISCO--(BUSINESS WIRE)-- Hims & Hers Health, Inc. (NYSE: HIMS) today announced eligible customers can access 6 months of prescription-only Wegovy® at a new, affordable price, making proven obesity care and treatments more accessible, more affordable, and more connected for millions of Americans.

\*                        \*                        \*

Starting today, new customers eligible for Wegovy® on the Hims & Hers platform can access their care for $549 per month for 6 months (for a limited-time only)1, ensuring customers have a longer window to access the affordable care they need. Included in that price is access to Hims & Hers' world-class, holistic approach to weight loss, powered by today's technology. Hims & Hers will continue to offer access to its full breadth of weight loss treatment options, including other medications, oral kits, protein, nutrition kits, and clinically-backed care plans, all of which help customers start and sustain their health journey based on their needs, goals, and eligibility.

24.     The above statements identified in ¶¶18-23 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Hims was engaged in the "deceptive promotion and selling of illegitimate, knockoff versions of Wegovy® that put patient safety at risk;" (2) that, as a result, there was a substantial risk that the Company's collaboration

with Novo Nordisk would be terminated; and (3) that, as a result of the foregoing, Defendants'
positive statements about the Company's business, operations, and prospects were materially
misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

25.    On June 23, 2025, before the market opened, Novo Nordisk issued a press release
announcing that it was ending its partnership with Hims, stating that Hims "***has failed to adhere to
the law which prohibits mass sales of compounded drugs under the false guise of
'personalization' and are disseminating deceptive marketing that put patient safety at risk.***" The
press release further stated "[b]ased on Novo Nordisk's investigation, the 'semaglutide' active
pharmaceutical ingredients that are in the knock-off drugs sold by telehealth entities and
compounding pharmacies" may contain "***unsafe and illicit foreign ingredients***." Specifically, the
press release stated, as follows, in relevant part:

> **Novo Nordisk terminates collaboration with Hims & Hers Health, Inc. due to
> concerns about their illegal mass compounding and deceptive marketing**
>
> • Collaboration of over one month has ended based on Hims & Hers deceptive
> promotion and selling of illegitimate, knockoff versions of Wegovy® that put patient
> safety at risk
>
> • **N**ovo Nordisk won't stop taking action to protect Americans from the dangers of
> illicit foreign active pharmaceutical ingredients in knock-off drugs
>
> • Efforts will continue to make authentic, FDA-approved Wegovy® directly
> available through NovoCare® Pharmacy to select telehealth organizations that share
> our commitment to safe and effective medical treatment for patients living with
> chronic diseases
>
> PLAINSBORO, N.J., June 23, 2025 /PRNewswire/ -- ***Novo Nordisk announced
> today that the company will no longer be working with Hims & Hers Health, Inc.,
> and that direct access to Wegovy® will no longer be available to Hims & Hers
> Health, Inc. via NovoCare® Pharmacy.***
>
> In late April, the FDA resolved the Wegovy® shortage based on its conclusion that
> Novo Nordisk is fully meeting current and projected nationwide demand for this
> medicine. In support of transitioning patients from knock-off compounded versions
> to authentic, FDA-approved Wegovy® through NovoCare® Pharmacy, Novo
> Nordisk began collaborating with telehealth companies. ***Over one month into the
> collaboration, Hims & Hers Health, Inc. has failed to adhere to the law which
> prohibits mass sales of compounded drugs under the false guise of
> "personalization" and are disseminating deceptive marketing that put patient
> safety at risk.***

"Novo Nordisk is firm on our position and protecting patients living with obesity. ***When patients are prescribed semaglutide treatments by their licensed healthcare professional or a telehealth provider, they are entitled to receive authentic, FDA-approved and regulated Wegovy®,"*** said Dave Moore, Executive Vice President, US Operations of Novo Nordisk Inc. "We will work with telehealth companies to provide direct access to Wegovy® that share our commitment to patient safety – and when companies engage in illegal sham compounding that jeopardizes the health of Americans, we will continue to take action."

Novo Nordisk is deeply concerned and is continuing to take proactive measures to keep US patients safe from knock-off drugs made with foreign illicit active pharmaceutical ingredients. ***Based on Novo Nordisk's investigation, the "semaglutide" active pharmaceutical ingredients that are in the knock-off drugs sold by telehealth entities and compounding pharmacies are manufactured by foreign suppliers in China. According to a report from the Brookings Institute, FDA has never authorized or approved the manufacturing processes used by any of these foreign suppliers to make semaglutide, nor has FDA ever reviewed or authorized the quality of the "semaglutide" they produce. The report also found that a "large share of [these Chinese suppliers] were never inspected by FDA, and many of those that were [inspected] had drug quality assurance violations." US patients should not be exposed to knock-off drugs made with unsafe and illicit foreign ingredients.***

26.    On this news, the Company's share price fell $22.24, or 34.6%, to close at $41.98 per share on June 23, 2025, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Hims securities between April 29, 2025 and June 22, 2025, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

28.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Hims's shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Hims shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records

1  maintained by Hims or its transfer agent and may be notified of the pendency of this action by mail,

2  using the form of notice similar to that customarily used in securities class actions.

3      29.    Plaintiff's claims are typical of the claims of the members of the Class as all members

4  of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that

5  is complained of herein.

6      30.    Plaintiff will fairly and adequately protect the interests of the members of the Class

7  and has retained counsel competent and experienced in class and securities litigation.

8      31.    Common questions of law and fact exist as to all members of the Class and

9  predominate over any questions solely affecting individual members of the Class.   Among the

10  questions of law and fact common to the Class are:

11          (a)    whether the federal securities laws were violated by Defendants' acts as

12  alleged herein;

13          (b)    whether statements made by Defendants to the investing public during the

14  Class Period omitted and/or misrepresented material facts about the business, operations, and

15  prospects of Hims; and

16          (c)    to what extent the members of the Class have sustained damages and the

17  proper measure of damages.

18      32.    A class action is superior to all other available methods for the fair and efficient

19  adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the

20  damages suffered by individual Class members may be relatively small, the expense and burden of

21  individual litigation makes it impossible for members of the Class to individually redress the wrongs

22  done to them.   There will be no difficulty in the management of this action as a class action.

23                  **UNDISCLOSED ADVERSE FACTS**

24      33.    The market for Hims's securities was open, well-developed and efficient at all

25  relevant times.   As a result of these materially false and/or misleading statements, and/or failures to

26  disclose, Hims's securities traded at artificially inflated prices during the Class Period.   Plaintiff and

27  other members of the Class purchased or otherwise acquired Hims's securities relying upon the

28

integrity of the market price of the Company's securities and market information relating to Hims, and have been damaged thereby.

34.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Hims's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Hims's business, operations, and prospects as alleged herein.

35.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Hims's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

36.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

37.    During the Class Period, Plaintiff and the Class purchased Hims's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

38.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Hims, their control over, and/or receipt and/or modification of Hims's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Hims, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**

**(FRAUD-ON-THE-MARKET DOCTRINE)**

39.     The market for Hims's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Hims's securities traded at artificially inflated prices during the Class Period.  On May 16, 2025, the Company's share price closed at a Class Period high of $64.65 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Hims's securities and market information relating to Hims, and have been damaged thereby.

40.     During the Class Period, the artificial inflation of Hims's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Hims's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Hims and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false

and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

41.    At all relevant times, the market for Hims's securities was an efficient market for the following reasons, among others:

(a)    Hims shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Hims filed periodic public reports with the SEC and/or the NYSE;

(c)    Hims regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Hims was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

42.    As a result of the foregoing, the market for Hims's securities promptly digested current information regarding Hims from all publicly available sources and reflected such information in Hims's share price. Under these circumstances, all purchasers of Hims's securities during the Class Period suffered similar injury through their purchase of Hims's securities at artificially inflated prices and a presumption of reliance applies.

43.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.    Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.

1   All that is necessary is that the facts withheld be material in the sense that a reasonable investor

2   might have considered them important in making investment decisions.  Given the importance of

3   the Class Period material misstatements and omissions set forth above, that requirement is satisfied

4   here.

5                                          **NO SAFE HARBOR**

6          44.    The statutory safe harbor provided for forward-looking statements under certain

7   circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The

8   statements alleged to be false and misleading herein all relate to then-existing facts and conditions.

9   In addition, to the extent certain of the statements alleged to be false may be characterized as forward

10  looking, they were not identified as "forward-looking statements" when made and there were no

11  meaningful cautionary statements identifying important factors that could cause actual results to

12  differ materially from those in the purportedly forward-looking statements. In the alternative, to the

13  extent that the statutory safe harbor is determined to apply to any forward-looking statements

14  pleaded herein, Defendants are liable for those false forward-looking statements because at the time

15  each of those forward-looking statements was made, the speaker had actual knowledge that the

16  forward-looking statement was materially false or misleading, and/or the forward-looking statement

17  was authorized or approved by an executive officer of Hims who knew that the statement was false

18  when made.

19                                           **FIRST CLAIM**

20                        **Violation of Section 10(b) of The Exchange Act and**

21                             **Rule 10b-5 Promulgated Thereunder**

22                                    **Against All Defendants**

23         45.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully

24  set forth herein.

25         46.    During the Class Period, Defendants carried out a plan, scheme and course of conduct

26  which was intended to and, throughout the Class Period, did: (i) deceive the investing public,

27  including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other

28  members of the Class to purchase Hims's securities at artificially inflated prices.  In furtherance of

this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

47.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Hims's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

48.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Hims's financial well-being and prospects, as specified herein.

49.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Hims's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Hims and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

50.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports;

(iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

51. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Hims's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

52. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Hims's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Hims's securities during the Class Period at artificially high prices and were damaged thereby.

53. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other

members of the Class and the marketplace known the truth regarding the problems that Hims was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Hims securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

54.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

55.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

56.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57.    Individual Defendants acted as controlling persons of Hims within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

59.    As set forth above, Hims and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  June 25, 2025

**GLANCY PRONGAY & MURRAY LLP**

By:  _/s/ Charles H. Linehan_

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  clinehan@glancylaw.com

**THE LAW OFFICES OF FRANK R. CRUZ**

Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
Telephone: (310) 914-5007

_Counsel for Plaintiff Michael Sookdeo_

# SWORN CERTIFICATION OF PLAINTIFF

## HIMS & HERS HEALTH, INC. SECURITIES LITIGATION

I, Michael Sookdeo, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Hims & Hers Health, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Hims & Hers Health, Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

6/23/2025
_____                     _____
        Date                                                    Michael Sookdeo

**Michael Sookdeo's Transactions in Hims and Hers Health, Inc. (HIMS)**
**Common Stock**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 5/6/2025 | Bought | 200 | $43.1999 |
| 5/6/2025 | Sold | -200 | $45.1101 |
| 5/7/2025 | Bought | 150 | $49.4599 |
| 5/12/2025 | Sold | -150 | $56.2101 |
| 5/12/2025 | Bought | 200 | $57.1399 |
| 5/15/2025 | Sold | -200 | $58.5401 |
| 5/15/2025 | Bought | 200 | $56.4799 |
| 5/27/2025 | Sold | -200 | $53.1300 |
| 5/30/2025 | Bought | 200 | $53.9450 |
| 6/3/2025 | Sold | -200 | $64.0201 |
| 6/3/2025 | Bought | 200 | $60.1399 |
| 6/4/2025 | Sold | -200 | $57.2400 |
| 6/5/2025 | Bought | 200 | $54.1799 |
| 6/9/2025 | Sold | -200 | $55.0901 |
| 6/9/2025 | Bought | 200 | $55.7489 |
| 6/16/2025 | Sold | -200 | $57.5601 |
| 6/17/2025 | Bought | 200 | $58.1199 |

**Michael Sookdeo's Transactions in Hims and Hers Health, Inc. (HIMS) Options**

| Date | Transaction Type | Contract Type | Exp / Strike | Quantity | Price |
|---|---|---|---|---|---|
| 5/6/2025 | Buy to Open | Call | 8/25/2025 / $33 | 2 | $16.40 |
| 5/12/2025 | Sell to Open | Call | 5/16/2025 / $63 | -2 | $1.36 |
| 5/12/2025 | Sell to Close | Call | 8/25/2025 / $33 | -2 | $24.60 |
| 5/13/2025 | Buy to Close | Call | 5/16/2025 / $63 | 2 | $3.05 |
| 5/13/2025 | Buy to Close | Call | 7/18/2025 / $48 | 2 | $16.60 |
| 5/13/2025 | Sell to Close | Call | 7/18/2025 / $48 | -1 | $17.80 |
| 5/27/2025 | Sell to Close | Call | 7/18/2025 / $48 | -1 | $10.50 |
| 6/9/2025 | Buy to Open | Call | 9/19/2025 / $45 | 2 | $16.40 |
| 6/16/2025 | Sell to Close | Call | 9/19/2025 / $45 | -2 | $19.55 |
| 6/17/2025 | Buy to Open | Call | 9/19/2025 / $50 | 2 | $16.90 |