**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com

*Attorneys for Movant Lai Family Trust*
*and Proposed Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SOOKDEO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HIMS & HERS HEALTH, INC., ANDREW DUDUM, and OLUYEMI OKUPE,<br><br>Defendants. | Case No.: 3:25-cv-05315-JD<br><br>**LAI FAMILY TRUST'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>Date:          October 2, 2025<br>Time:          10:00 a.m.<br>Courtroom:  11-19th Floor<br>Judge:        Hon. James Donato |
| ARA YAGHSIZIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HIMS & HERS HEALTH, INC., ANDREW DUDUM and OLUYEMI OKUPE,<br><br>Defendants. | Case No.: 5:25-cv-05321-JD |

LAI FAMILY TRUST'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE
COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

## **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT ................................................................................................................. 3

     A.      The Lai Family Trust Has the Largest Financial Interest in the Relief Sought By the Class. ............................................................................................................... 4

     B.      The Lai Family Trust Satisfies Rule 23. ............................................................ 4

     C.      Mr. Wang Is Not a Member of the Class. .......................................................... 7

     D.      Mr. Wang Is Atypical and Subject to Unique Defenses Because He Traded Exclusively in a Leveraged ETF that Held Complex Derivative Swap Securities and Little, If Any, Hims Common Stock. ................................................................. 8

     E.      No Proof Exists to Rebut the Statutory Presumption In Favor of Lai Family Trust .... 11

III.    CONCLUSION ............................................................................................................. 12

LAI FAMILY TRUST'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE
COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

# TABLE OF AUTHORITIES

**Cases**

*Ali v. Intel Corp.,*
No. 18-cv-00507-YGR, 2018 U.S. Dist. LEXIS 89401 (N.D. Cal. May 29, 2018) ........................4

*Andrada v. Atherogenics, Inc.,*
Nos. 05 Civ. 00061 (RJH); 05 Civ. 1938 (RJH), 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. Apr. 18, 2005) ............................................................................................................................................9, 10

*Applestein v. Medivation, Inc.,*
No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sep. 17, 2010) ...............9, 10, 11

*In re Aqua Metals Sec. Litig.,*
No. 17-cv-07142-HSG, 2018 U.S. Dist. LEXIS 86889 (N.D. Cal. May 23, 2018) .....................1, 6

*Armour v. Network Assocs.,*
171 F. Supp. 2d 1044 (N.D. Cal. 2001) .........................................................................................11

*In re Cavanaugh,*
306 F.3d 726 (9th Cir. 2002) .....................................................................................................11, 12

*Constance Sczesny Trust v. KPMG LLP,*
223 F.R.D. 319 (S.D.N.Y 2004) ....................................................................................................10

*Cook v. Allergan PLC,*
No. 18 Civ. 12089 (CM), 2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019) ................3, 10

*Deora v. NantHealth, Inc.,*
No. CV 17-01825 BRO (MRWx), 2017 U.S. Dist. LEXIS 117499 (C.D. Cal. May 31, 2017) .......5

*Di Scala v. ProShares Ultra Bloomberg Crude Oil,*
No. 20 Civ. 5865 (NRB), 2020 U.S. Dist. LEXIS 242969 (S.D.N.Y. Dec. 28, 2020) ...........3, 9, 10

*In re Elan Corp. Sec. Litig.,*
No. 1:08-cv-08761-AKH, 2009 U.S. Dist. LEXIS 39859 (S.D.N.Y. May 8, 2009) ..................9, 10

*Gelt Trading v. Co-Diagnostics, Inc.,*
No. 2:20-cv-00368-JNP-DBP, 2021 U.S. Dist. LEXIS 45963 (D. Utah Mar. 10, 2021) ...........9, 10

*Knox v. Yingli Green Energy Holding Co. Ltd.,*
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...........................................................................................1

*Micholle v. Ophthotech Corp.,*
No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) .........................9

*Paddock v. Dreamwork Animation SKG, Inc.,*
No. CV 14-6053 SJO (Ex), 2014 U.S. Dist. LEXIS 194327 (C.D. Cal. Oct. 22, 2014) .................4

*Patel v. Reata Pharms., Inc.*,
   549 F. Supp. 3d 559 (E.D. Tex. 2021) ...................................................................................10

*Praytor Hayes v. Enphase Energy, Inc.*,
   No. 24-cv-04249-JD, 2025 U.S. Dist. LEXIS 63597 (N.D. Cal. Mar. 31, 2025)............................1

*Robb v. Fitbit Inc.*,
   No. 16-cv-00151-SI, 2016 U.S. Dist. LEXIS 62457 (N.D. Cal. May 10, 2016)............................1

*Sanders v. VeriFone Sys.*,
   No. 5:13-CV-01038-EJD, 2013 U.S. Dist. LEXIS 145000 (N.D. Cal. Oct. 7, 2013) ....................12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .....................................................................................................6

*In re Stitch Fix, Inc. Sec. Litig.*,
   393 F. Supp. 3d 833 (N.D. Cal. 2019) .....................................................................................2, 9

*Veal v. LendingClub Corporation,*
   No. 18-cv-02599-BLF, 2018 U.S. Dist. LEXIS 190912 (N.D. Cal. Nov. 7, 2018)........................5

*Welgus v. TriNet Grp., Inc.*,
   No. 15-cv-03625-BLF, 2015 U.S. Dist. LEXIS 162547 (N.D. Cal. Dec. 3, 2015) ........................6

*Ziolkowski v. Netflix, Inc.,*
   No. 17-cv-01070-HSG, 2017 U.S. Dist. LEXIS 91848 (N.D. Cal. June 14, 2017) ........................6

**Statutes**

15 U.S.C. § 78u-4 .............................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23(a) ..............................................................................................................6

iii

## I.    INTRODUCTION

The Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4) (the "PSLRA"), sets forth a clear directive in terms of appointing lead plaintiffs to serve in securities class actions. It instructs courts to appoint as "lead plaintiff" the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). That person or entity is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Movant Lai Family Trust (with Mr. Willy Lai as its authorized trustee representative) has the largest financial interest in the class and also satisfies Rule 23's typicality and adequacy requirements. Therefore, the Court should grant its motion and approve it and its chosen counsel as lead plaintiff and lead counsel, respectively.

The Lai Family Trust has the "largest financial interest" in the outcome of the actions. Courts in the Ninth Circuit typically look to "approximate loss suffered" when comparing "financial interests" among competing movants. *See Praytor Hayes v. Enphase Energy, Inc.*, No. 24-cv-04249-JD, 2025 U.S. Dist. LEXIS 63597, at *4 (N.D. Cal. Mar. 31, 2025) (Donato, J.); *In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 U.S. Dist. LEXIS 86889, at *7 (N.D. Cal. May 23, 2018) (equating losses with greatest financial interest); *Robb v. Fitbit Inc.*, Case No. 16-cv-00151-SI, 2016 U.S. Dist. LEXIS 62457, at *8 (N.D. Cal. May 10, 2016); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015).  The following table provides the recoverable losses for each movant (with the exceptions of movant Shuo-Hsien Wang who, as discussed below, is not a member of the alleged Class and movants Derek Smith, Daihong Guo, Brian Minter, Roger Poppie, and Bizhan Shaban who all filed notices of non-opposition and/or withdrew their respective motions):

| Movant | Recoverable Losses |
|---|---|
| Lai Family Trust | $66,570.41 |
| James A. Schalter | $27,195.13 |

In addition to having the "largest financial interest" in the actions, the Lai Family Trust makes the requisite *prima facie* showing of adequacy and typicality under Rule 23 for the purposes of triggering the PSLRA's lead plaintiff presumption. Willy Lai is the trustee of Lai Family Trust, and as

LAI FAMILY TRUST'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE
COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

trustee, he is individually authorized to act on behalf of Lai Family Trust in all respects, including this lawsuit. *See* ECF Nos. 12 and 12-1 (Opening Brief and Certification). Mr. Lai considers himself to be a sophisticated investor, having been investing in the stock market for over 25 years. *See* ECF No. 12 at p. 9. He also has experience overseeing attorneys, as he has hired attorneys for contract matters. *Id*. Lai Family Trust purchased stock in Hims & Hers Health, Inc. ("Hims" or the "Company") at the same time during the Class Period and sustained losses in the same manner as all other class members. Thus, its claims are exactly the same as every other member of the class.

One movant, Shuo-Hsien Wang, purports to have a larger financial interest in the actions than the Lai Family Trust. However, Mr. Wang's financial interest is misleadingly inflated because his losses are unrecoverable by way of this lawsuit. In his motion papers, Mr. Wang claims to have "purchased Hims securities during the Class Period" and that his claims are "based on the same legal theory and arise from the same events and course of conduct as the Class's claims." ECF No. 37 at 8. But in truth, Mr. Wang purchased 39,482 shares in an Exchange Traded Fund containing virtually no Hims securities at all. Specifically, Mr. Wang's investment in the "Defiance Daily Target 2X Long HIMS ETF" was ***not*** an investment in Hims stock but instead an investment in a basket of securities consisting mainly of complex derivative swap contracts posing a litany of additional risks far beyond those faced by ordinary stockholders. While Mr. Wang may have lost approximately $550,000 in connection with his trades, that loss is legally distinct from the Class claims and, therefore, precludes Mr. Wang from representing a class consisting of "persons and entities that purchased or otherwise acquired Hims securities." *See* ECF No. 1 at 1.

Even if Mr. Wang's purchases constituted class securities (and, to be sure, they do not), he does not meet Rule 23's typicality and adequacy requirements. Mr. Wang ***exclusively*** transacted in ETFs during the Class Period, and not in common stock. This gives rise to a serious "vulnerability" to unique defenses and renders him atypical in the same way that option traders are atypical. *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (Donato, J.); *see also Di Scala v. ProShares Ultra Bloomberg Crude Oil*, No. 20 Civ. 5865 (NRB), 2020 U.S. Dist. LEXIS 242969, at *10 (S.D.N.Y. Dec. 28, 2020) (declining to appoint movant whose losses "overwhelmingly reflect his sale of put options, raising issues of his typicality and adequacy"); *Cook v. Allergan PLC*, No. 18 Civ. 12089

(CM), 2019 U.S. Dist. LEXIS 51962, at *7 (S.D.N.Y. Mar. 21, 2019) (same where more than 60% of movant's losses arose from options trading). This point cannot be overstated. Indeed, Mr. Wang's investment in the ETF is even further removed from the underlying common stock than an option holder, thereby making him even more atypical and even more vulnerable to unique defenses. In particular, Mr. Wang would face tremendous difficulty proving the element of "reliance," which is necessary for Section 10(b) liability under the Exchange Act. The derivatives that made up the "Defiance Daily Target 2X Long HIMS ETF" were designed to benefit off price fluctuations in the market for Hims common stock. Thus, similar to atypical arbitrage traders or day traders, Mr. Wang would be equally unable to successfully trigger (and maintain) a *Basic* presumption of "reliance" for Rule 23(b) predominance purposes.

The Lai Family Trust's evidentiary showing on the motion is sufficient to trigger the PSLRA's presumption of "most adequate plaintiff" to serve as lead plaintiff and, as demonstrated below, none of the other movants will be able to rebut that presumption. Accordingly, Mr. Lai on behalf of the Lai Family Trust respectfully requests that its motion be granted in its entirety.

## II.    ARGUMENT

The PSLRA provides that courts "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members. . . ." 15 U.S.C. §§78u-4(a)(3)(B)(i). The PSLRA further provides for a presumption that the most adequate plaintiff is the "person or group of persons" who have the "largest financial interest in the relief sought by the class" and who "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §§78u-4(a)(3)(B)(iii)(I)(bb) & (cc). This presumption may only be rebutted upon proof by a member of the purported plaintiff class that the presumptive most adequate plaintiff is inadequate or atypical. 15 U.S.C. §§78u-4(a)(3)(B)(iii)(II). Here, the Lai Family Trust is the presumptive lead plaintiff, as it satisfies the foregoing criteria and no proof exists to rebut the presumption.

LAI FAMILY TRUST'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE
COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

## A.     The Lai Family Trust Has the Largest Financial Interest in the Relief Sought By the Class.

Relative to other movants, the Lai Family Trust has the largest financial interest in the relief sought by the Class, as demonstrated below:

| Movant | Recoverable Losses |
|---|---|
| Lai Family Trust | $66,570.41 |
| James A. Schalter | $27,195.13 |

*See* ECF Nos. 12-3 (Lai Family Trust), 21-4 (James A. Schalter).[1] The Lai Family Trust suffered a loss of $66,570.41 on its Hims investment, nearly $40,000 more than the next closest movant. *See Paddock v. Dreamwork Animation SKG, Inc.*, No. CV 14-6053 SJO (Ex), 2014 U.S. Dist. LEXIS 194327, at *6 (C.D. Cal. Oct. 22, 2014) ("approximate loss [] is considered most important."). Therefore, the Lai Family Trust has the largest financial interest in the actions.

## B.     The Lai Family Trust Satisfies Rule 23.

Pursuant to the PSLRA, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Of the four prerequisites, only two—typicality and adequacy—are relevant inquiries on a motion for lead plaintiff, as they address the personal characteristic of the class representative. *See Ali v. Intel Corp.* No. 18-cv-00507-YGR, 2018 U.S. Dist. LEXIS 89401, at *5 (N.D. Cal. May 29, 2018) (focusing on typicality and adequacy). Here, the Lai Family Trust satisfies both requirements, triggering the statutory presumption of lead plaintiff in its favor.

The Lai Family Trust readily satisfies the typicality requirement because it, like all members of the Class: (1) purchased Hims stock during the Class Period; (2) in reliance on the misstatements and/or omissions made by Defendants; (3) at prices artificially inflated by those same misstatements and/or omissions; and (4) suffered losses as a result. The following chart depicts the Lai Family Trust's

---

[1] The above table does not include movant Shuo-Hsien Wang who is not a member of the alleged Class or movants Derek Smith, Daihong Guo, Brian Minter, Roger Poppie, and Bizhan Shaban who filed notices of non-opposition and/or withdrew their respective motions. *See* ECF Nos. 46-50.

LAI FAMILY TRUST'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE
COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF

purchases and sales during the Class Period relative the allegations in the pending complaints:

### Hims & Hers Health, Inc. Timeline

| DATE | EVENT/STATEMENT | Sookdeo Complaint |
|------|-----------------|-------------------|
| 4/29/2025 | Press Release: Novo Nordisk Collaboration | ¶18 |
| 5/5/2025 | 1Q25 Financial Earnings | ¶19–22 |
| 5/13/2025 | Lai Family Trust Purchase (1,916 shares) | Certification, ECF No. 12-2 |
| 5/14/2025 | Lai Family Trust Purchase (1,693 shares) | Certification, ECF No. 12-2 |
| 5/15/2025 | Lai Family Trust Purchase (597 shares) | Certification, ECF No. 12-2 |
| 5/15/2025 | JPMorgan Presentation | ¶30 (Yaghsizian Complaint) |
| 5/22/2025 | Press Release: Wegovy Partnership | ¶23 |
| 6/18/2025 | Lai Family Trust Sale (597 shares) | Certification, ECF No. 12-2 |
| 6/23/2025 | Press Release (Pre-Market): Novo Nordisk Partnership Cancelled | ¶25 |
| 6/23/2025 | Lai Family Trust Sale (3,609 shares) | Certification, ECF No. 12-2 |

As illustrated above, the Lai Family Trust purchased Hims common stock during the Class Period following the alleged false and misleading statements, meaning that Lai Family Trust purchased Hims common stock at artificially inflated prices. The Lai Family Trust then held its shares (or at least the majority of them) through the corrective disclosure at the end of the Class Period, *i.e.*, the pre-market press release on June 23, 2025 announcing the termination of the Novo Nordisk partnership. As a result the Lai Family Trust sustained a significant loss as the value of its Hims shares declined, similar to all other alleged Class members. Therefore, Lai Family Trust's claims are similar, if not identical, to those of the Class. *See Veal v. LendingClub Corp.*, No. 18-cv-02599-BLF, 2018 U.S. Dist. LEXIS 190912, at *11 (N.D. Cal. Nov. 7, 2018) (typicality satisfied where losses incurred by suffering damages when misrepresentations or omissions came to light); *Deora v. NantHealth, Inc.*, No. CV 17-01825 BRO (MRWx), 2017 U.S. Dist. LEXIS 117499, at *9 (C.D. Cal. May 31, 2017) (same).

The adequacy requirement of Rule 23 is satisfied when a class representative establishes that it

will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The test for adequacy asks whether the lead plaintiff and his counsel 'have any conflicts of interest with other class members' and whether the lead plaintiff and his counsel will 'prosecute the action vigorously on behalf of the class.'" *Welgus v. TriNet Grp., Inc.*, No. 15-cv-03625-BLF, 2015 U.S. Dist. LEXIS 162547, at *8 (N.D. Cal. Dec. 3, 2015) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)). The adequacy requirement is met if no conflicts exist between the representative's interests and those of the class, and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation. *Schwartz v. Opus Bank*, No. CV 16-07991-AB (JPRx), 2017 U.S. Dist. LEXIS 217637, at *6-7 (C.D. Cal. Feb. 23, 2017).

The Lai Family Trust easily satisfies the adequacy requirement of Rule 23. Lai Family Trust has the largest financial interest at stake in this litigation, thus insuring it will advocate vigorously to recover the losses it and all other members of the Class suffered. *See In re Aqua Metals Sec. Litig.*, 2018 U.S. Dist. LEXIS 86889, at *9 (movant's "substantial financial stake in the outcome of this litigation, its timely filing of its motions, and the quality of its briefing all demonstrate that it is both motivated to, and capable of, vigorously pursuing this litigation."). Willy Lai, considers himself to be a sophisticated investor, having been investing in the stock market for over 25 years. *See* ECF No. 12 at p. 9.  He resides in Palo Alto, California, and possesses a Bachelor of Arts in Architecture. *Id.* Mr. Lai is currently employed as Chief Design Officer for AI Vision Technologies Inc. *Id.* Further, he has experience overseeing attorneys, as he has hired attorneys for contract matters. *Id.* Mr. Lai is the trustee of the Lai Family Trust. As trustee, he is individually authorized to act on behalf of the Movant in all respects, including this lawsuit. Moreover, no conflicts exist between Lai Family Trust and the members of the Class as all interests are aligned in recovering losses caused by Defendants misstatements. *Ziolkowski v. Netflix, Inc.*, No. 17-cv-01070-HSG, 2017 U.S. Dist. LEXIS 91848, at *9 (N.D. Cal. June 14, 2017) (adequacy satisfied where no evidence of conflict between lead plaintiff and class). Finally, the Lai Family Trust has chosen Levi & Korsinsky as Lead Counsel for the Class. Levi & Korsinsky is highly experienced in securities class actions and has been appointed regularly as lead counsel or co-lead counsel in cases such as this. *See* ECF No. 12-5 (Firm Resume).

6

**C.    Mr. Wang Is Not a Member of the Class.**

In contrast to the Lai Family Trust, Mr. Wang traded *exclusively* in ETFs during the Class Period and purchased no common stock. This means he is not part of the Class as it is currently defined, which is: "persons and entities that purchased or otherwise acquired Hims securities" during the Class Period. *See* ECF No. 1 at 1. Naturally, the Class definition does not include a 2X leveraged ETF containing complex derivative securities, such as the "Defiance Daily Target 2X Long HIMS ETF" that Mr. Wang purchased. *See* ECF No. 37-3 (Mr. Wang's Loss Chart).

Further details about Mr. Wang's investment were obtained from the "Defiance Daily Target 2X Long HIMS ETF" website and its public filings. According to the ETF's website, the fund consists of the following securities:

| % of Net Assets | Name |
|---|---|
| 76.07% | HIMS & HERS HEALTH INC SWAP CS |
| 61.36% | HIMS & HERS HEALTH INC SWAP BMO |
| 34.29% | HIMS & HERS HEALTH INC COM SWAP CANTOR |
| 24.64% | HIMS & HERS HEALTH INC SWAP MAREX |
| 4.97% | First American Government Obligations Fund 12/01/2031 |
| 3.59% | Hims & Hers Health Inc |
| -105.12% | Cash & Other |

*See* Apton Supp. Decl., Ex. A (Defiance ETFs LLC's HIMZ Webpage). As indicated, Hims stock makes up only a very small portion (less than 1.5%) of the ETF with the rest being complex swap contracts and derivatives.

By virtue of his investment, Mr. Wang executed an investment strategy that was materially different from ordinary class members and subjected him to specific, acute risks that Hims stockholders ordinarily did not face. Specifically, the ETF's sponsor, DEFIANCE ETFs, told investors the following:

- The HIMZ ETF invests in *swap contracts and options* that are based on the share price of HIMS. ***This subjects the Fund to certain of the same risks as if it owned shares of HIMS, even though it does not***. *See* Apton Supp. Decl., Ex. B (Defiance ETF LLC's Financial Statements April 30, 2025).

- ***HIMS is not affiliated with the Trust, the Fund, or the Adviser, or their respective***

7

*affiliates and is not involved with this offering* in any way and has no obligation to consider your Shares in taking any corporate actions that might affect the value of Shares. *See* Apton Supp. Decl., Ex. B (Defiance ETF LLC's Financial Statements April 30, 2025).

- The Fund may not achieve investment results, before fees and expenses, that correspond to two times (2x) the daily performance of the underlying security, and may return substantially less during such periods. During such periods, *the Fund's actual leverage levels may differ substantially from its intended target, both intraday and at the close of trading, potentially resulting in significantly lower returns*. *See* Apton Supp. Decl., Ex. A (Defiance ETFs LLC's HIMZ Webpage).

- The Fund is designed to be utilized only by knowledgeable investors who understand the potential consequences of seeking daily leveraged (2X) investment results, understand the risks associated with the use of leverage, and are willing to monitor their portfolios frequently. *The Fund is not intended to be used by, and is not appropriate for, investors who do not intend to actively monitor and manage their portfolios*. For periods longer than a single day, *the Fund will lose money if the Underlying Security's performance is flat, and it is possible that the Fund will lose money even if the Underlying Security's performance increases over a period longer than a single day*. An investor could lose the full principal value of his/her investment *within a single day*. *See* Apton Supp. Decl., Ex. A (Defiance ETFs LLC's HIMZ Webpage).

Mr. Wang's investment may have been tied to Hims common stock through various financial instruments but it was not, and does not, represent an investment in Hims securities, as is required to participate in this class action.

**D.    Mr. Wang Is Atypical and Subject to Unique Defenses Because He Traded Exclusively in a Leveraged ETF that Held Complex Derivative Swap Securities and Little, If Any, Hims Common Stock.**

Assuming *arguendo* that Mr. Wang is included in the class (which he should not be), his investments and transaction history render him atypical and vulnerable to unique defenses thereby further precluding him from serving as the lead plaintiff. Absent any common stock purchases, the case

8

law strongly supports the conclusion that Mr. Wang is atypical. *See, e.g., In re Stitch Fix, Inc., Sec. Litig.*, 393 F. Supp. 3d at 836; *Applestein v. Medivation, Inc.*, No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255, at *10-12 (N.D. Cal. Sep. 17, 2010) (holding that because lead plaintiff "traded only in options, the court holds that [he] should not be appointed"); *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120, at *24 (S.D.N.Y. Mar. 13, 2018) (refusing to appoint movant who traded only in put and call options); *Gelt Trading v. Co-Diagnostics, Inc.,* No. 2:20-cv-00368-JNP-DBP, 2021 U.S. Dist. LEXIS 45963, at *15 (D. Utah Mar. 10, 2021) (declining to appoint movant whose purchased options rather than stock because he "is subject to unique defenses regarding damages. Courts have recognized that comparing damage calculations for purchasers of stock and purchasers of options is like 'comparing apples to oranges'"); *Andrada v. Atherogenics, Inc.*, Nos. 05 Civ. 00061 (RJH); 05 Civ. 1938 (RJH), 2005 U.S. Dist. LEXIS 6777, at *14-16 (S.D.N.Y. Apr. 18, 2005) (same where movant purchased only call options).

*Gelt Trading* is instructive. In that case, competing movants challenged the typicality of a movant (Tadi) vying for lead plaintiff claiming the second largest loss. Competing movants argued that Tadi was atypical because all of his loses were derived from options-related transactions.  Specifically, competing movants were (rightfully) concerned that determining the precise value of the options would threaten to become the focus of the litigation. The Court held that "if Tadi, who traded solely in options, were chosen as lead plaintiff, "he would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict."" (quoting *In re Elan Corp. Sec. Litig.,* No. 1:08-cv-08761-AKH, 2009 U.S. Dist. LEXIS 39859, at *6 (S.D.N.Y. May 8, 2009)).

The *Di Scala* case further illustrates the point. In that case, competing movants (Honggui Qu and Pinchas Dan Danino) challenged the typicality and adequacy of the movant with the alleged largest financial loss (Edmund Jin). Qu and Danino argued that Jin was atypical because 82% of his losses came from options-related transactions. Several questions were raised, including 1) whether losses arising from Jin's sale of put options would qualify him as member of a class of investors who purchased or otherwise acquired UCO securities from March 6, 2020 and April 27, 2020, inclusive, and 2) whether Jin was motivated by the same market incentives as class members who traded shares on the open

9

market. The Court held that, "[u]ndoubtedly, these questions raised at the lead plaintiff stage will remain, and are certain to become focal points at class certification. Accordingly, because factual issues unique to Jin 'would likely threaten to become the focus of the litigation,' the Court declines to appoint Jin lead plaintiff." *Di Scala*, 2020 U.S. Dist. LEXIS 242969, at *10-11 (internal citations omitted). The court in *Cook* came to a similar conclusion when it refused to appoint a movant (Ge Zhou) with over 60% of claimed losses as a result of options trading. The *Cook* court held that Zhou's claims were atypical of the average stockholder's claim under Rule 23. Citing *Andrada,* the court stated that appointing Zhou lead plaintiff "would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, interest rates, and he could subject the class to unique defenses, causing unnecessary conflict." *Cook* , 2019 U.S. Dist. LEXIS 51962, at *7 (internal quotation and citation omitted).

The facts at hand are analogous to the *Gelt Trading*, *Di Scala*, and *Cook* cases. Here, because Mr. Wang's losses emanate exclusively from transactions in a leveraged ETF (holding few or no shares of Hims common stock), he would "introduce factual issues irrelevant to stockholder class members . . . causing unnecessary conflict." *In re Elan,* 2009 U.S. Dist. LEXIS 39859, at *6. The nature of "[derivatives] trading and the information [] used to make investment decisions [in connection therewith] could become the focus of the litigation, distracting from the central issue: did [Hims] commit a fraud on the market?" *Applestein*, 2010 U.S. Dist. LEXIS 98255, at *12. It is clear that Mr. Wang is subject to the same unique defenses and typicality concerns. *See Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 325 (S.D.N.Y 2004) ("[lead plaintiff movant] is correct that some courts have dismissed securities fraud claims asserted by option holders, where their losses resulted from alleged omissions."). Accordingly, Mr. Wang is not typical of the vast majority of the proposed class and, therefore, cannot fairly and adequately serve as the lead plaintiff. *See Patel v. Reata Pharms., Inc.,* 549 F. Supp. 3d 559, 567 (E.D. Tex. 2021) ("However, like in *Cook* and *Di Scala*, the fact that Massar's losses during the Class Period were based solely on option contracts renders Massar atypical of the putative class. And while Massar did trade in both common stock and options during the Class Period, his losses arose exclusively from his options; in fact, Massar profited from his common-stock investments. This material gain in common stocks makes Massar's trading practices during the Class

10

Period functionally the same as an investor who traded only in options and materially different from the putative class consisting largely of common stockholders.").

The nature of Mr. Wang's investment and, in particular, the complex derivative swap agreements that he held vis-à-vis his investment in the "Defiance Daily Target 2X Long HIMS ETF" gives rise to the conclusion that Mr. Wang was not relying on Hims' public statements but instead abnormalities and fluctuations in the price of Hims' common stock. The ETF was structured in such a way that it would only increase if/when Hims stock moved in certain directions; indeed, the ETF's sponsor warned: "The Fund is not intended to be used by, and is not appropriate for, investors who do not intend to actively monitor and manage their portfolios. ***For periods longer than a single day, the Fund will lose money if the Underlying Security's performance is flat, and it is possible that the Fund will lose money even if the Underlying Security's performance increases over a period longer than a single day***. An investor could lose the full principal value of his/her investment within a single day." *See* Apton Supp. Decl., Ex. A (Defiance ETFs LLC's HIMZ Webpage). (emphasis added). Thus, Mr. Wang's investment strategy is analogous to that of a day trader, and therefore susceptible to the same "reliance" unique defenses which preclude him from being appointed as the lead plaintiff for the Class. *See*, *e.g.*, *Applestein*, 2010 U.S. Dist. LEXIS 98255, at *9 ("Day-traders typically focus on technical price movements rather than price, and therefore are subject to a defense th[at] they would have purchased the stock at issue regardless of the misstatement/omission.") (internal quotation marks and alteration omitted).

**E.      No Proof Exists to Rebut the Statutory Presumption In Favor of Lai Family Trust**

For all the reasons above, Lai Family Trust is the presumptive lead plaintiff. The presumption can only be rebutted with actual ***proof*** that the Group will not fairly and adequately represent the interests of the Class or is subject to a unique defense. *In re Cavanaugh,* 306 F.3d 726, 740-41 (9th Cir. 2002) ("the presumption of most adequate plaintiff may be overcome ***only upon proof*** that the presumptively most adequate plaintiff 'will not fairly and adequately protect the interests of the class'"). "Speculative assertions" are insufficient to rebut the lead plaintiff presumption. *See Armour v. Network Assocs.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) (collecting cases). Accordingly, no proof exists to rebut the presumption in favor of Lai Family Trust.

**F.    Lai Family Trust's Choice of Counsel Should Be Approved.**

The PSLRA also provides that, once the court has designated a lead plaintiff, that lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). The district court should approve lead plaintiff's choice of counsel unless necessary to protect the interests of the class. *Sanders v. VeriFone Sys.,* No. 5:13-CV-01038-EJD, 2013 U.S. Dist. LEXIS 145000, at *11 (N.D. Cal. Oct. 7, 2013) ("'The district court does not select class counsel at all', and typically approves the lead plaintiff's selection of counsel") (citing *In re Cavanaugh*, 306 F.3d at 732-34). Here, the Lai Family Trust has selected Levi & Korsinsky to serve as lead counsel. As Levi & Korsinsky has extensive experience in litigating securities class actions, the Lai Family Trust's choice of lead counsel should be approved. *See* ECF No. 12-5 (Firm Resume).

## III.    CONCLUSION

For the foregoing reasons, the Lai Family Trust respectfully requests that this Court: (1) consolidate the Actions; (2) appoint Lai Family Trust as Lead Plaintiff for the Class; (3) approve Levi & Korsinsky as Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: September 8, 2025                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton (SBN 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Tel: (415) 373-1671
Email: aapton@zlk.com

*Attorneys for Lai Family Trust*
*and Proposed Lead Counsel for the Class*

LAI FAMILY TRUST'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE
COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF