ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
shawnw@rgrdlaw.com
        – and –
DARREN J. ROBBINS (168593)
MICHAEL ALBERT (301120)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| MICHAEL SOOKDEO, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No. 3:25-cv-05315-JD |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | JAMES A. SCHALTER'S OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS |
| HIMS & HERS HEALTH, INC., et al., | ) ) | DATE: October 2, 2025 |
| Defendants. | ) ) ) | TIME: 10:00 a.m. CTRM: 11, 19th Floor JUDGE: Hon. James Donato |

4933-5142-9735

## I.    INTRODUCTION

Eight movants compete for appointment as lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), but only one – James A. Schalter – is qualified to lead this action.[1]

The PSLRA prescribes a straightforward process for appointing a lead plaintiff.  First, the court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 729-31 (9th Cir. 2002).  Second, the court must "focus its attention on *that* plaintiff and determine, based on the information [it] has provided in [its] pleadings and declarations, whether [it] satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id*. at 730 (emphasis in original).[2]  If so, then that plaintiff "becomes the presumptively most adequate plaintiff." *Id*.  "If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake . . . ." *Id*.  Here, only Mr. Schalter survives this inquiry.

Though two movants claim a larger financial stake than Mr. Schalter, each is fatally flawed and cannot serve as lead plaintiff.

- Shuo-Hsien Wang lacks standing and is not a member of the class because he never purchased Hims & Hers Health, Inc. ("Hims") securities.  Instead, he gambled on a highly speculative, leveraged fund unaffiliated with Hims.  *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 742, (1975) (standing requires plaintiff to be a direct "purchaser[] or seller[] of the stock in question"); *In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181, 1186 (9th Cir. 2024)); and

- The Lai Family Trust is not a legal entity that can sue or be sued.  The motion was filed in the name of the trust itself - a legal impossibility under California law - not its trustee who has legal standing to sue or be sued. *Moeller v. Super. Ct.*, 16 Cal. 4th 1124, 1132 n.3 (1997).

---

[1]    The eight movants are: (1) Mr. Schalter; (2) Shuo-Hsien Wang; (3) Lai Family Trust; (4) Brian Minter; (5) Derek Smith; (6) Bizhan Shaban; (7) Roger Poppie; and (8) Daihong Guo.  *See* ECF 12, 15, 21, 23, 31, 37, 42; *Yaghsizian v. Hims & Hers Health, Inc.*, No. 3:25-cv-05321, ECF 14 (N.D. Cal.) ("*Yaghsizian* Action").  On September 8, 2025, Derek Smith, Daihong Guo, and Brian Minter filed notices of non-opposition to the competing motions.  *See* ECF 46, 47, 48.  All movants agree that the above-captioned securities class action should be consolidated with the *Yaghsizian* Action.

[2]    All emphasis is added and all citations and footnotes are omitted.

JAMES A. SCHALTER'S OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS - 3:25-cv-05315-JD                                                                                                       - 1 -
4933-5142-9735

James A. Schalter, the movant with the next largest financial interest, presents none of the issues plaguing other lead plaintiff movants and exposes the class to none of the risks associated with the competing movants.  Mr. Schalter is a prototypical investor who purchased Hims common stock in his own name and suffered a significant loss when the fraud was revealed.  He satisfies all of the PSLRA's requirements and should be appointed Lead Plaintiff.

| MOVANT | CLAIMED LOSS |
|---|---|
| *Shuo-Hsien Wang (suffered no losses on Hims securities; lacks standing; highly atypical)* | ~~$563,924~~ |
| *Lai Family Trust (failed to move on behalf of real party in interest; did not document trustee's authority to act)* | ~~$66,570~~ |
| **James A. Schalter** | **$27,195** |
| *Derek Smith (filed non-opposition)* | $25,564 |
| *Brian Minter (filed non-opposition)* | $21,528[3] |
| Bizhan Shaban | $20,980 |
| Roger Poppie | $17,055 |
| *Daihong Guo (filed non-opposition)* | $11,305 |

## II.    ARGUMENT

### A.    Shuo-Hsien Wang Did Not Purchase Any Hims Securities and Transacted Only in a Leveraged, Highly Speculative ETF

Mr. Wang claims to have "suffered a $563,924 loss . . . in connection with his purchases of Hims securities."  ECF 37 at 7.  Mr. Wang, however, omitted a crucial fact from his brief and declaration: 100% of his claimed losses derive from transactions not in Hims stock (NYSE: HIMS), but in an unaffiliated, leveraged investment vehicle called the Defiance Daily Target 2X Long HIMS ETF (NASDAQ: HIMZ).  In short, HIMZ is not a "Hims securit[y]" or "Hims common stock."  ECF 1 at ¶1 (defining the class as purchasers or acquirers of "Hims securities"); *Yaghsizian* Action, ECF 1 at ¶1 (defining the class as purchasers or acquirers of "Hims common stock").

---

[3]    Though Mr. Minter claims to have lost $29,618 (*Yaghsizian* Action, ECF 14 at 5), it appears his counsel incorrectly included significant pre-Class Period transactions in calculating this claimed loss. *Yaghsizian* Action, ECF 15-2, 15-3 (Certification and loss chart including a significant number of transactions before the April 29, 2025 Class Period start date).  When properly accounting for Mr. Minter's actual Class Period transactions, his loss is $21,528.

HIMZ is managed by Tidal Investments LLC and its assets are legally held pursuant to a written agreement with Tidal Trust II, a Delaware statutory trust.  As the HIMZ prospectus itself acknowledges: "**NONE OF THE FUND [HIMZ], TIDAL TRUST II, AND TIDAL INVESTMENTS LLC ARE AFFILIATED WITH THE UNDERLYING [HIMS] SECURITY**." *See* Declaration of Darren J. Robbins in Support of James A. Schalter's Opposition to Competing Lead Plaintiff Motions ("Robbins Opp. Decl."), Ex. 1 at 3.  The HIMZ ETF "seeks daily leveraged investment results of two times (200%) the daily percentage change in the share price of Hims." *Id.* at 1.  HIMZ attempts to achieve this daily return by "employing derivatives, namely swap agreements and/or listed options contracts." *Id.* at 2.  The prospectus of this Delaware business trust and other promotional materials are littered with warnings concerning HIMZ's highly speculative and risky nature, and that it is not intended for anything more than short-term trading:

- "[T]he Fund is riskier than alternatives that do not use leverage because the Fund magnify the performance of its Underlying Security." *Id.* at 1.

- "Each Fund seeks daily leveraged investment results and is intended to be used as a short-term trading vehicle." *Id.*

- "The Funds are not suitable for all investors.  The Funds are designed to be utilized only by sophisticated investors, such as traders and active investors employing dynamic strategies." *Id.*

- "The performance of a Fund for periods longer or shorter than a single day will very likely differ in amount, and possibly even direction, from 200% of the daily return of its Underlying Security's shares for the same period . . . ." *Id.*

- "Over periods longer than a single day, the Funds may lose value even if their underlying securities increase in performance, and they will lose value if the underlying securities remain flat.  An investor could lose the full principal value of their investment within a single day." *See* https://www.globenewswire.com/news-release/2025/03/13/3041864/0/en/Defiance-Launches-RKLX-and-HIMZ-2X-Leveraged-ETFs-for-Rocket-Lab-and-Hims-Hers.html.

The speculative disconnect between the units of the HIMZ ETF Mr. Wang purchased and stock issued by the corporate defendant in this case (Hims) is not theoretical.  Since HIMZ's inception, the performance of the units issued by the Milwaukee-based Delaware business trust have

JAMES A. SCHALTER'S OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS - 3:25-cv-05315-JD
- 3 -
4933-5142-9735

drastically diverged from the performance of the stock issued by the San Francisco-based Hims, as detailed below:

| Return % (March 13, 2025 – Present) | |
|---|---|
| **HIMZ Units** | **Hims Common Stock** |
| -6.51% | +46.30% |

Mr. Wang's exclusive trading in HIMZ creates three insurmountable barriers to his appointment.

First, and most fundamentally, even based on the most inclusive class definition, Mr. Wang is not a putative class member in this case. The more inclusive *Sookdeo* Action defines the class as "persons and entities that purchased or otherwise acquired Hims securities" during the Class Period. ECF 1 at ¶1. But Mr. Wang did not purchase a single share of Hims securities during the Class Period. Instead, he only purchased units of HIMZ, an entirely unrelated investment vehicle listed on a different exchange which transacted in third-party swaps and options contracts.[4]

Second, even if the class definition was expanded to specifically include purchasers of the HIMZ double leveraged ETF, defendants would compellingly argue that Mr. Wang would still not have standing to pursue the class's claims because under binding Ninth Circuit precedent, "a plaintiff has standing under Section 10(b) if the plaintiff purchased or sold the securities about which the alleged misrepresentations were made." *CCIV / Lucid*, 110 F.4th at 1186. In *CCIV / Lucid*, the Ninth Circuit relied on Supreme Court precedent first established in *Blue Chip Stamps*, 421 U.S. at 742, to reject plaintiffs' claims that purchasers of securities in one company could pursue claims

---

[4] To allow Mr. Wang to claim losses on his purchases of HIMZ in this case would be akin to allowing an investor who only purchased the S&P 500 Index mutual fund to claim their losses in any case brought on behalf of purchasers of any of the 500 listed companies' securities included in the S&P 500 Index. In addition to greatly expanding the boundaries of standing in a manner inconsistent with Ninth Circuit law, to indulge Mr. Wang's assertion would allow investors to claim the same losses twice: once from the entity that may have actually purchased the securities at issue (in this case, the HIMZ ETF via the Tidal Trust II), then a second time from the investor (in this case, Mr. Wang) who purchased units of the ETF or mutual fund entity – diluting the claims of legitimate class members such as Mr. Schalter and the thousands of other class members who actually purchased Hims securities. To be clear – any claim of damages in this case belongs to HIMZ, not Mr. Wang. *See In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 444 (S.D.N.Y. 2013) ("The investors in the mutual funds never purchased or sold shares of Winstar, and thus could not themselves bring suit. . . . [The mutual fund's manager] is the only party who can bring suit for the losses sustained in its mutual funds . . . .") (citing *Blue Chip Stamps*, 421 U.S. 723).

against a different issuer for making allegedly misleading statements that affected the value of the company's securities plaintiffs held. 110 F.4th at 1187. The Ninth Circuit explained that:

> To limit the class of plaintiffs who may bring an action under Section 10(b), the Supreme Court has adopted the "purchaser-seller rule" (also known as the "*Birnbaum* Rule"), which confines standing to "purchasers or sellers of the stock in question." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 742, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). The stock in question is "the security to which the prospectus, representation, or omission relates." *Id*. at 747, 95 S.Ct. 1917.
>
> \*       \*       \*
>
> Under Plaintiffs' desired formulation of the standard, hypothetical plaintiffs would need only to have purchased a security *any* security to satisfy the purchaser-seller requirement. But Plaintiffs' interpretation of the securities laws would vastly expand the boundaries of Section 10(b) standing and contradict the express limiting purpose of the *Birnbaum* Rule. The Supreme Court has cautioned that Section 10(b) does not "provide a cause of action to the world at large," and "should not be interpreted to provide a private cause of action against the entire marketplace in which the issuing company operates."

*Id.* at 1184-86 (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 162 (2008)). Here, the complaints are clear that the alleged misrepresentations by Hims executives and contained in Hims' SEC filings were about Hims securities and had nothing to do with the HIMZ ETF. *See* ECF 1 (no mention of HIMZ throughout the complaint); *Yaghsizian* Action, ECF 1 (same). Thus, Mr. Wang lacks standing to pursue the claims at issue in this case because Mr. Wang did not purchase or sell the securities about which the alleged misrepresentations were made.[5]

---

[5]     As the Ninth Circuit explained, the burden is on Mr. Wang to establish that he is typical and adequate of the class. *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) ("the Rule 23 determination should be based on only the movant's pleadings and declarations"). Instead of explaining how purchasing a double derivative instrument like the HIMZ ETF makes him typical and adequate of the class, Mr. Wang conclusorily (and falsely) states he meets the typicality requirement because "he (1) **purchased Hims securities** during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by Defendants' misconduct, *causing the price of Hims stock to fall*." ECF 37 at 8. Mr. Wang **did not** purchase Hims securities. It was Mr Wang's burden to address these concerns upfront, which he did not do. This is particularly so given the clear arguments defendants are sure to exploit against Mr. Wang's standing to the detriment of the class if he was appointed lead plaintiff. *See In re Bard Assocs., Inc.*, 2009 WL 4350780, at \*3 (10th Cir. Dec. 2, 2009) (finding no abuse of discretion in district court's holding that movant must demonstrate standing "by the time the lead plaintiff motions are due"); *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at \*7 n.10 (N.D. Ill. Nov. 15, 2019) ("[A] viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the lead plaintiff selection process.").

Third, even assuming *arguendo* that Mr. Wang **is** a class member and **does** have standing to pursue the claims before the Court, his claims would be highly *a*typical of the class which he seeks to represent.  The HIMZ ETF is a double derivative instrument – HIMZ's holdings are either swaps or options written on Hims securities.  Robbins Opp. Decl., Ex. 1 at 2.  Such a structure "very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict.'"  *Cook v. Allergn PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019).  The HIMZ prospectus itself makes clear that similar (and even more complex) factual issues are guaranteed to exist here.  It names a litany of factors other than the performance of Hims securities that will affect the performance of HIMZ: "a) the Underlying Security volatility; b) the Underlying Security's performance; c) period of time; d) financing rates associated with leveraged exposure; and e) other Fund expenses."  Robbins Opp. Decl., Ex. 1 at 2.

Recognizing when a movant poses such unnecessary risks to a putative class, this Court has refused to appoint an investor facially claiming a larger financial interest where that movant's claimed loss resulted entirely from option transactions.  *See Stitch Fix*, 393 F. Supp. 3d at 836 (movant's transactions in options were "sufficient to dispute his adequacy and typicality") (citing *Applestein v. Medivation Inc.*, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010)).  Further, courts have even refused to appoint as lead plaintiff investors in certain securities of the defendant issuer when those securities are not widely owned by class members.  *See Jastram v. Nextera Energy, Inc.*, 2023 WL 11885983, at *5 n.7 (S.D. Fla. Oct. 26, 2023) ("Jackson County's exclusive ownership of preferred stock raises, at least at this point, sufficient concerns about atypicality in a class composed almost entirely of common stockholders.").

The Court should not subject the class to the multitude of unique defenses defendants will raise against Mr. Wang.  His motion should be denied.

**B.    Willy Lai, Purported Trustee of the Lai Family Trust, Is the Real Party in Interest, Not the Trust**

The Lai Family Trust claims to have suffered $66,570 in losses.  ECF 12 at 6; *id.* at 2 of 15 (defining Lai Family Trust as the "Movant").  The problem for the Lai Family Trust is that Federal

Rule of Civil Procedure 17(a) requires an action be brought by the real party in interest. Under Rule 17(b)(3), the capacity of a party to sue or be sued is determined by the law of the state where the court is located. Under California law, "a trust is not a person but rather 'a fiduciary **relationship** with respect to property.'" *Moeller*, 16 Cal. 4th at 1132 n.3 (emphasis in original). "Indeed, an ordinary express trust is not an entity separate from its trustees." *Id.* (cleaned up). "For that reason, the trustee, rather than the trust, is the real party in interest in litigation involving trust property." *Id.*; *see Presta v. Tepper*, 179 Cal. App. 4th 909, 914 (2009) ("[A] trust itself can neither sue nor be sued in its own name. Instead, the real party in interest in litigation involving a trust is **always** the trustee."). Courts are clear – lead plaintiff motions on behalf of a trust for appointment as lead plaintiff must be brought by the trustee. *See, e.g.*, *Ind. Pub. Ret. Sys. v. Rivian Auto., Inc.*, 2024 WL 5279156 (C.D. Cal. Oct. 24, 2024) (appointing trustees on behalf of trust); *Monsky v. Direct Digit. Holdings, Inc.*, No. 4:24-cv-01940, ECF 31 (S.D. Tex. Aug. 27, 2024) (same); *Zahabi v. Fisker, Inc.*, No. 2:23-cv-09976-PLA-KS, ECF 56 (C.D. Cal. July 16, 2024) (same); *Zornberg v. NAPCO Sec. Techs., Inc.*, 2023 WL 12071593 (E.D.N.Y. Nov. 14, 2023) (same); *Fiyyaz Pirani, as Trustee of Imperium Irrevocable Tr. v. Netflix, Inc.*, No. 4:22-cv-03164-JST, ECF 24 (N.D. Cal. Oct. 11, 2022) (same). Having failed to move on behalf of the real party in interest within the 60-day statutory deadline, the Lai Family Trust cannot now cure the deficiency in its motion. *See Boeing*, 2019 WL 6052399, at *7 n.10; *Bard Assocs.*, 2009 WL 4350780, at *3; *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 612 (W.D. Okla. 2009) ("assignments of claims which occurred after the filing of the motion to be appointed lead plaintiff cannot be considered"). As a result, the Lai Family Trust's motion should be denied. *See In re Spectranetics Corp. Sec. Litig.*, 2009 WL 1663953, at *5 (D. Colo. June 15, 2009) (denying lead plaintiff motion where movant attempted to "conflate the interests of two distinct legal entities," and explaining that it is "improper simply to disregard the legal distinction between Karkus as an individual and the separate legal entity of Forrester Financial, LLC").[6]

---

[6]    Even if the Court allowed the Lai Family Trust to cure its motion after the lead plaintiff deadline by designating the purported trustee, Willy Lai, as the movant, the motion would still be deficient because Mr. Lai likewise failed to timely provide the trust document or any other evidence at all that Willy Lai "is individually authorized to act on behalf of the [Trust] in all respects,

## C. Mr. Schalter Is the Presumptive Lead Plaintiff

Mr. Schalter, the movant claiming the next largest loss ($27,195), presents none of the typicality, adequacy, and unique defense challenges that will, at a minimum, be exploited by defendants and distract from class issues. Mr. Schalter not only suffered a significant loss, but he also satisfies the Rule 23 requirements. "[O]ther than pointing out [his] relatively low[er] financial stake in the litigation," other movants cannot make any legitimate argument against Mr. Schalter's appointment. *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008) (appointing pension fund as lead plaintiff despite the fact that it did not claim the greatest financial loss because it "is the first [movant] to meet [the PSLRA's] standards").

Indeed, Mr. Schalter purchased Hims common stock during the Class Period and was damaged when the stock fell following the alleged disclosure of fraud. *See* ECF 21-4 (loss chart showing Mr. Schalter held a significant number of Hims shares when the alleged fraud was disclosed). Further, with 25 years of investment experience, Mr. Schalter (the manager of an investment firm with an extensive financial educational background) has significant knowledge of securities markets and is well-suited to lead the class in this case. *See* ECF 21-5. Finally, Mr. Schalter's adequacy is further bolstered by his selection of Robbins Geller as lead counsel, a firm with an extensive track record successfully prosecuting litigating securities class actions in this District and before this Court. *See Purple Mountain Tr. v. Wells Fargo & Co.*, No. 3:18-cv-03948-JD (N.D. Cal.) ($300 million recovery on behalf of Wells Fargo investors); *In re Zoom Sec. Litig.*, No. 3:20-cv-02353-JD (N.D. Cal.) ($150 million recovery on behalf of Zoom investors) (pending final approval). Because the competing movants cannot rebut the presumption in favor of Mr. Schalter, his motion should be granted.

## III. CONCLUSION

All of the movants claiming larger losses than Mr. Schalter saddle the class with adequacy, typicality, and unique defense concerns. From the outset, the Court should avoid the potential for

including this lawsuit." ECF 12 at 9; *see, e.g., Bhojwani v. Pistiolis,* 2007 WL 2197836, at *5 (S.D.N.Y. June 26, 2007), *report and recommendation adopted in part, rejected in part on different grounds by* 2007 WL 9228588 (S.D.N.Y. July 31, 2007) (trustee's claim to authority insufficient to establish authority).

protracted litigation on these issues.  Mr. Schalter presents none of these issues.  As such, his motion should be granted.  The competing motions should be denied.

DATED:  September 8, 2025                    Respectfully submitted,

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            DARREN J. ROBBINS
                                            MICHAEL ALBERT
                                            JUAN CARLOS SANCHEZ


                                                     s/ Darren J. Robbins
                                                    DARREN J. ROBBINS

                                            655 West Broadway, Suite 1900
                                            San Diego, CA  92101
                                            Telephone:  619/231-1058
                                            darrenr@rgrdlaw.com
                                            malbert@rgrdlaw.com
                                            jsanchez@rgrdlaw.com

                                            ROBBINS GELLER RUDMAN
                                              & DOWD LLP
                                            SHAWN A. WILLIAMS
                                            Post Montgomery Center
                                            One Montgomery Street, Suite 1800
                                            San Francisco, CA  94104
                                            Telephone:  415/288-4545
                                            shawnw@rgrdlaw.com

                                            Proposed Lead Counsel for Proposed Lead
                                            Plaintiff