ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
shawnw@rgrdlaw.com
       – and –
DARREN J. ROBBINS (168593)
MICHAEL ALBERT (301120)
JUAN CARLOS SANCHEZ (301834)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL SOOKDEO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> HIMS & HERS HEALTH, INC., et al., <br><br> Defendants. | Case No. 3:25-cv-05315-JD <br><br> CLASS ACTION <br><br> JAMES A. SCHALTER'S REPLY IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF <br><br> DATE: October 2, 2025 <br> TIME: 10:00 a.m. <br> CTRM: 11, 19th Floor <br> JUDGE: Hon. James Donato |

4904-3737-7641

## I.    INTRODUCTION

Of the remaining movants, only Mr. Schalter satisfies the PSLRA's requirements for appointment as lead plaintiff.  Mr. Wang's motion should be denied because he lacks standing and his claims are atypical of the class.  The Lai Family Trust's motion should be denied because it failed to timely evidence that it is the real party in interest.  As no other movant has substantively opposed Mr. Schalter's appointment as lead plaintiff, his motion should be granted.

## II.    ARGUMENT

### A.    Mr. Wang Is Not Part of the Class, Lacks Standing, and Is Atypical of the Class He Seeks to Represent

In his opposition, Mr. Wang was unable to provide a single case where a purchaser of a double leveraged ETF was deemed a typical and adequate lead plaintiff, much less where such an investor was determined to be a member of a class of purchasers of an unaffiliated defendant issuer's securities.  Instead, he relies on two out of Circuit, nearly two-decades old, pre-*CCIV / Lucid* cases where investors who transacted in contracts for difference ("CFDs") were appointed lead plaintiff. *See* ECF 54 at 5 (citing *Freudenberg v. E\*Trade Fin. Corp.*, 2008 WL 2876373 (S.D.N.Y. July 16, 2008); *In re Crocs, Inc. Sec. Litig.*, 2008 WL 4298316 (D. Colo. Sept. 17, 2008)).[1]  In those cases, the courts evaluated whether CFDs fell under the Securities Exchange Act of 1934's definition of a "security."  *Freudenberg*, 2008 WL 2876373, at \*6; *Crocs*, 2008 WL 4298316, at \*3.  Determining that they did, the courts went on to note the extensive similarities between CFDs and defendants' common stock, ultimately appointing as lead plaintiff the movants who purchased CFDs. *Freudenberg*, 2008 WL 2876373, at \*7; *Crocs*, 2008 WL 4298316, at \*4 (citing *Freudenberg*).

*Freudenberg* and *Crocs* are not helpful to Mr. Wang here.  Both cases were decided 16 years before the Ninth Circuit's recent opinion in *In re: CCIV / Lucid Motors Sec. Litig.*, 110 F.4th 1181 (9th Cir. 2024).  In *CCIV / Lucid*, the Ninth Circuit unambiguously endorsed and applied the bright-line rule that a plaintiff must have purchased "the security about which the alleged

---

[1]    *Freudenberg* and *Crocs* were decided two months apart and *Crocs* relies heavily on the reasoning in *Freudenberg*.

JAMES A. SCHALTER'S REPLY IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF - 3:25-cv-05315-JD                                                                              - 1 -
4904-3737-7641

misrepresentations were made." *Id.* at1186.[2]  In doing so, the Ninth Circuit explicitly rejected the notion that standing extends to any plaintiff who simply purchased a security that was "'sufficiently *connected* to the misstatement.'" *Id.* (emphasis in original).[3]  Neither the *Freudenberg* court nor the *Crocs* court engaged in any inquiry concerning whether the CFDs at issue there were the "security about which the alleged misrepresentations were made."  *Id.*  Instead, each district court simply concluded that the CFDs were securities as defined by the Exchange Act and were similar enough to the defendant issuer's securities to satisfy typicality.  *Freudenberg*, 2008 WL 2876373, at *6-*7; *Crocs*, 2008 WL 4298316, at *3-*4.[4]  In light of the Ninth Circuit's clear directive, it would be error to apply the reasoning of *Freudenberg* and *Crocs* in this case.   Because the alleged misrepresentations in this case were made about Hims & Hers Health, Inc. securities, and not the HIMZ ETF, Mr. Wang lacks standing to be appointed lead plaintiff.

The issue with Mr. Wang's claim goes beyond the type of security he purchased.  The inquiry also must focus on *who* suffered the legal injury he claims.  The reasoning behind the bright-line rule in *CCIV / Lucid* is well established.  Courts have long drawn a critical distinction between a fund (or ETF) and the individual investors in that fund.  That is precisely why courts have found in similar circumstances that the *fund* is the legal entity that has standing to sue for losses related to the assets it purchases and/or holds, *not the individual* who bought into the fund.  *See Boston Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *8 (D. Conn. Apr. 13, 2023) ("The unit holders themselves 'never purchased or sold shares of [Alexion], and thus could not themselves bring suit.'"); *In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 444 (S.D.N.Y. 2013) ("The investors in the mutual funds never purchased or sold shares of Winstar, and thus could not themselves bring

---

[2]    *Freudenberg* was also decided 14 years before the Second Circuit confirmed that standing depends on "whether the plaintiff bought or sold the securities about which the misstatements were made." *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 88 (2d Cir. 2022).

[3]    Unless otherwise noted, all emphasis is added and citations are omitted.

[4]    To be clear: Mr. Schalter does not doubt that the HIMZ ETF likely meets the definition of a security under the Exchange Act, but it is not a security about which the misrepresentations were made.  As the Ninth Circuit recognized, to hold otherwise "would vastly expand the boundaries of Section 10(b) standing and contradict the express limiting purpose of the *Birnbaum Rule*." *CCIV / Lucid*, 110 F.4th at 1186.

JAMES A. SCHALTER'S REPLY IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF - 3:25-cv-05315-JD                                                                                                   - 2 -
4904-3737-7641

suit.") (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)). This legal distinction is precisely the type of barrier that prevents an individual like Mr. Wang from being part of the class at all, let alone serving as lead plaintiff.

Even if Mr. Wang could overcome these fundamental issues of standing and class membership, his claims would be highly atypical of the class he seeks to represent. Mr. Wang attempts to draw a parallel between the HIMZ ETF and CFDs at issue in *Freudenberg* and *Crocs*. However, these financial instruments are fundamentally different, making Mr. Wang an inappropriate representative for the thousands of direct Hims securities purchasers that are part of the class in this case. The courts in *Freudenberg* and *Crocs* appointed plaintiffs who purchased CFDs precisely because those instruments were designed to function in an almost identical manner to the underlying stock, a characteristic entirely absent from the HIMZ ETF.[5] In short, the HIMZ ETF exhibits none of the characteristics that rendered CFDs purchasers typical. While CFDs are alleged to have purchase and sale prices ***identical*** to the underlying stock, and CFD holders receive the benefit of dividends and may include voting rights, the HIMZ ETF is an entirely separate leveraged entity managed by a company unaffiliated with Hims. To that point, the HIMZ ETF prospectus explicitly warns that its performance will "'very likely differ in amount, and possibly even direction'" from the underlying Hims stock because it is affected by factors such as volatility,

---

[5]

> CFD purchasers acquire the future price movement of the underlying company's common stock (positive or negative) without taking formal ownership of the underlying shares. Unlike calls and puts, which trade in tandem with, but not at the same price as, the underlying publicly traded common stock, the purchase and sale prices of CFDs are alleged to be identical to the prices quoted for shares of the underlying company's common stock on the public securities exchange. In advance of pricing the CFDs, actual matching shares of the underlying common stock are purchased or sold by the broker on the public securities exchange on which the common stock normally trades. The prices paid or received by the broker for those corresponding shares of common stock are the prices set for the CFDs representing those shares and charged to, or paid by, the customer. Because identical matched transactions occur in shares of the actual common stock immediately before the purchase or sale of the CFDs, any influence on the public market price of the underlying securities is also reflected in the price of the CFDs. CFDs have no fixed expiration date, CFD holders receive the benefit of any dividends paid on the underlying shares, and the CFD may include voting rights on the underlying shares.

*Freudenberg*, 2008 WL 2876373, at *7; *Crocs*, 2008 WL 4298316, at *4.

financing rates, and other fund expenses.  ECF 53 at 3, 6 (Mr. Schalter's opposition).  This disconnect means that Mr. Wang's claims would require an extensive, fact-intensive inquiry into those issues, which courts have long held render a plaintiff atypical.  *See* ECF 53 at 6; *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (movant's transactions in options were "sufficient to dispute his adequacy and typicality"); *Cook v. Allergn PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (same).

In sum, the Court should reject Mr. Wang's invitation to evade the Ninth Circuit's bright-line rule.  His attempts to rely on dated, out-of-circuit cases involving different investment instruments cannot overcome his fundamental lack of standing and atypicality.  Mr. Wang's motion should be denied.

**B.    The Lai Family Trust Is Not the Real Party In Interest**

The Lai Family Trust's motion should be denied because it is not a legal entity that can sue or be sued under California law.  *See* ECF 53 at 6-7.  Instead, the trustee is the real party in interest in litigation involving trust property.  Mr. Lai's opposition (ECF 51) raises no authority to the contrary.  Because the motion was improperly filed in the name of the trust itself, the motion is a legal impossibility.  Nearly three weeks past the PSLRA's statutory lead plaintiff deadline, Mr. Lai cannot now cure the deficiency in the Lai Family Trust's motion.  Its motion should be denied.

**C.    Mr. Schalter's Motion Should Be Granted**

No competing movant substantively challenges Mr. Schalter's motion.  Having purchased shares of Hims common stock during the Class Period, Mr. Schalter has a direct financial interest in the litigation's outcome, and he is otherwise highly qualified to serve as lead plaintiff.  *See* ECF 53 at 8.  Because the competing movants have not provided the "proof" necessary to rebut the lead plaintiff presumption in Mr. Schalter's favor, his motion should be granted.

**III.    CONCLUSION**

Mr. Wang has failed to provide any authority supporting the appointment of an investor in a double derivative security as lead plaintiff.  Similarly, the Lai Family Trust has not met its burden of establishing that it is the real party in interest.  Thus, their motions should be denied.  No movant substantively opposes Mr. Schalter's motion.  His motion should be granted.

DATED:  September 15, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
MICHAEL ALBERT
JUAN CARLOS SANCHEZ


                    s/ Darren J. Robbins
                 DARREN J. ROBBINS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
shawnw@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead
Plaintiff

JAMES A. SCHALTER'S REPLY IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS
LEAD PLAINTIFF - 3:25-cv-05315-JD                                                    - 5 -
4904-3737-7641