**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096
dkaplan@saxenawhite.com

*Counsel for Proposed Lead Plaintiff Shuo-Hsien
Wang, and Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL SOOKDEO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HIMS & HERS HEALTH, INC., ANDREW DUDUM, and OLUYEMI OKUPE,<br><br>Defendants. | No. 3:25-cv-05315-JD<br><br>**CLASS ACTION**<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SIUPPORT OF THE MOTION OF SHUO-HSIEN WANG FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>DATE: October 2, 2025<br>TIME: 10:00 a.m.<br>COURTROOM: 11, 19th Floor<br>JUDGE: Hon. James Donato |

ARA YAGHSIZIAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

HIMS & HERS HEALTH, INC., ANDREW DUDUM and OLUYEMI OKUPE,

Defendants.

No. 3:25-cv-05321-JD

Shuo-Hsien Wang respectfully submits this reply memorandum of points and authorities in further support of his motion for appointment as Lead Plaintiff (ECF No. 37), and in opposition to the competing motions filed by Lai Family Trust and James A. Schalter.[1]  *See* ECF Nos. 12, 21.

## I.    INTRODUCTION

Both competing movants acknowledge that Shuo-Hsien Wang has the greatest financial interest in the outcome of this litigation, and neither contests that Mr. Wang has established his prima facie adequacy under Rule 23.  Mr. Wang has also established his prima facie typicality under Rule 23, triggering the PSLRA presumption in favor of his appointment as Lead Plaintiff.  In a self-interested attempt to rebut that presumption to secure their own appointment, Lai Family Trust and Schalter claim that Mr. Wang lacks standing to represent Class interests because he invested in Defiance Daily Target 2X Long HIMS ETF ("HIMS ETF"), not Hims common stock.  However, just like Hims common stock, HIMS ETF is one of many securities included in the operative Class definition: "persons and entities that purchased or otherwise acquired Hims *securities*" during the Class Period.  *See* Complaint, ECF No. 1 at 2, ¶ 1.

Both competing movants also concede that HIMS ETF is a mix of swaps and options, with Hims common stock as the underlying security—just like any other Hims option.  Given these concessions, Lai Family Trust's and Schalter's attacks on Mr. Wang's Rule 23 typicality falls flat, especially because courts regularly appoint options investors as lead plaintiffs and class representatives on behalf of classes of investors in a company's securities, which may consist of common stock, swaps, options, warrants, contracts for difference ("CFDs"), bonds, and a wide variety of other securities as defined by Congress and the SEC.  The competing movants also argue that Mr. Wang is subject to unique defenses, but this attack misses its mark as well.  HIMS ETF price and volume changes throughout the Class Period closely matched the price and volume changes for the underlying Hims common stock, based on Defendants' misrepresentations and the corrective disclosure.  This shows that, like all Class members, Mr. Wang purchased artificially inflated Hims securities during the Class Period and was damaged when the corrective disclosure

---

[1] Unless otherwise noted, defined terms have the meanings ascribed in Mr. Wang's motion and opposition (ECF Nos. 37, 54), emphasis is added, and internal quotations, citations are omitted.

removed the inflation caused by Defendants' misrepresentations, causing the price of Hims securities to fall.  There is no credible argument that Mr. Wang is exposed to unique defenses.  Since there is no "proof" to rebut the presumption favoring Mr. Wang's appointment, Mr. Wang respectfully requests that the Court grant his motion in full and deny the competing motions.

## II.    ARGUMENT

### A.    THERE IS NO DISPUTE THAT MR. WANG HAS THE LARGEST FINANCIAL INTEREST AND IS PRIMA FACIE ADEQUATE

Mr. Wang's loss of $563,924 is ***more than twenty times larger*** than Schalter's $27,195 loss, ***more than eight times larger*** than Lai Family Trust's $66,570 loss, and ***more than six times larger*** than both competing movants' losses ***combined***.  *See* ECF No. 54 at 6, 8-10.  Indeed, both competing movants concede that Mr. Wang's financial interest is superior.  *See* Lai Family Trust Opposition ("Opp."), ECF No. 51 at 5-6; *see also* Schalter Opp., ECF No. 53 at 2-3.  These concessions show that Mr. Wang satisfies the largest financial interest requirement.  *See Trustees of Welfare & Pension Funds of Local 464A Pension Fund v. Enphase Energy, Inc.*, No. 24-cv-9038, 2025 WL 2410521, at *2-3 (N.D. Cal. Aug. 20, 2025) (noting competing movant's concession that movant claiming the largest LIFO loss had the largest financial interest).

Mr. Wang also satisfies Rule 23's requirements.  *See* ECF No. 37 at 12-14, ECF No. 54 at 9-10.  Notwithstanding the competing movants' empty challenges to Mr. Wang's typicality (*see infra*, Sections II.B), Mr. Wang's claims are typical of other Class members, and neither competing movant challenges Mr. Wang's adequacy, an implicit concession that Mr. Wang is prima facie adequate.[2]  Because Mr. Wang has the greatest financial interest and is prima facie typical and adequate, and no movant has offered proof to rebut the presumption that Mr. Wang is the most adequate plaintiff, Mr. Wang should be appointed.  *Sundaram v. Freshworks Inc.*, No. 22-cv-6750, 2023 WL 1819158, at *4 (N.D. Cal. Feb. 8, 2023) (finding presumptive lead plaintiff was adequate and typical where there was "no evidence" of unique defenses or conflicting claims with the class).

### B.    THE COMPETING MOVANTS' CHALLENGES TO MR. WANG'S TYPICALITY BASED ON THE NATURE OF HIS INVESTMENTS FAIL

Lai Family Trust's and Schalter's contention that Mr. Wang lacks standing to represent the

___

[2] By failing to challenge Mr. Wang's adequacy under Rule 23 in their opposition memoranda, Lai Family Trust and Schalter have forfeited their right to challenge Mr. Wang's motion on this basis.

Class and is atypical—by virtue of his investments in the HIMS ETF, as opposed to Hims common stock—is unfounded.[3]  In fact, both Lai Family Trust and Schalter concede that Mr. Wang's HIMS ETF investments consist of swaps and options that are based on Hims common stock, just like any other swap or option that is based on an issuer's common stock.  *See* Lai Family Trust Opp., ECF No. 51 at 11 (explaining that the HIMS ETF "'invests in swap contracts and options that are based on the share price of HIMS'" common stock) (quoting HIMS ETF financial statements); *see also* Schalter Opp., ECF No. 53 at 4 (explaining that the HIMS ETF consists of "'swap agreements and/or listed options contracts'") (quoting HIMS ETF prospectus).[4]

Given these concessions, the competing movants have not offered the necessary "proof" to rebut the presumption in favor of Mr. Wang's appointment as lead plaintiff.  *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) (noting that "speculative assertions" are "insufficient to rebut the lead plaintiff presumption").  Rather, the competing movants offer only self-interested arguments to secure a leadership role: arguments that prejudice the Class by seeking to exclude HIMS ETF investors, and other investors in Hims swaps and options.[5]

[3] Contrary to Schalter's half-hearted arguement that Mr. Wang did not disclose that his losses derive from transactions in HIMS ETF (*see* ECF No. 53 at 3) in both his PSLRA certification and his loss chart, Mr. Wang disclosed that he purchased and sold HIMS ETF shares during the Class Period.  *See* Certification, ECF No. 37-2 at 4 (listing HIMS ETF purchases and sales); Loss Chart, ECF No. 37-3 at 2 (calculating losses based on transactions in HIMS ETF).  Indeed, as both competing movants acknowledge (*see* ECF No. 51 at 11; ECF No. 53 at 5), the Class is defined as "persons and entities that purchased or otherwise acquired ***Hims securities***"—not Hims common stock—during the Class Period, and HIMS ETF is one such security.

[4] Schalter argues that Mr. Wang's HIMS ETF investments are "akin" to investments in an "S&P 500 Index mutual fund" that includes "500 listed companies' securities."  *See* Schalter Opp., ECF No. 53 at 5 n.4.  This is nonsense.  As both Schalter and Lai Family Trust recognize by attaching the HIMS ETF prospectus and financial statements, respectively, to their opposition memoranda, HIMS ETF is a ***single-issuer, company-specific*** ETF that "employ[s] derivatives, namely swap agreements and/or listed options contracts[,]" to "achieve two times (200%) the daily percentage change in the share price of the Underling Security[,]" *i.e.*, Hims common stock.  *See* Schalter Opp., ECF No. 53-2 at 5.  Indeed, the HIMS ETF prospectus specifies that the "value of the Fund, which ***focuses on an individual security***, may be more volatile than a traditional pooled investment or the market as a whole and may perform differently from the value of traditional pooled investment or the market as a whole."  *Id.*  Similarly, the financial statements explain that HIMS ETF "invests in swap contracts and options that are based on the share price of HIMS" common stock.  This subjects the Fund to certain of the same risks as if it owned shares of HIMS" common stock, "even though it does not."  *See* Lai Family Trust Opp., ECF No. 51-3 at 5.

[5] The Court should decline the competing movants' invitation to compare the movants to find which is "more typical."  *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("That the district court believes another plaintiff may be more typical or more adequate is of no consequence.  So long as the plaintiff with the largest losses" is typical and adequate, "he is entitled to lead plaintiff
*Footnote continued on next page*

### 1.    HIMS ETF Is a Security Within the *Sookdeo* Class Definition

HIMS ETF is a Hims security as defined in the operative Class Definition: "[P]ersons and entities that purchased or otherwise acquired Hims securities between April 29, 2025 and June 22, 2025, inclusive." *See* Complaint, ECF No. 1 at 2, ¶ 1.  Both competing movants recognize that the Class consists of purchasers of Hims ***securities***, not common stock.[6]  The competing movants urge the Court to exclude HIMS ETF investors from the Class, but their narrow construction of "securities" conflicts with Congressional and SEC definitions, and well-settled precedent.

In the Exchange Act, Congress defined the term "security" as, among other things: "any note, stock, treasury stock, security future, ***security-based swap***, bond, debenture, . . . ***any put, call, straddle, option, or privilege on any security***, . . ."  *See* Definitions and application, 15 U.S.C. § 78c(10).  Thus, the Exchange Act definition of security explicitly contemplates both swaps and options "***on any security***," just like the HIMS ETF, a mix of swaps and options ***on*** Hims stock.

Courts have adopted Congress's mandate for an expansive reading of securities, appointing as lead plaintiff purchasers of a wide range of securities, not just stock.  *See*, *e.g.*, *Freudenberg v. E\*Trade Fin. Corp.*, No. 07-cv-8538, 2008 WL 2876373, at \*6 (S.D.N.Y. Jul. 16, 2008) ("In light of the [Exchange] Act's broad definition of 'security,' courts have appointed as lead plaintiffs purchasers of a wide variety of financial instruments.  Further, they ***often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer*** where the interests of those purchasers are aligned."); *see also Hom v. Vale, S.A.*, No. 15-cv-9539, 2016 WL 880201, at \*5 (S.D.N.Y. Mar. 7, 2016) ("The term [']security,['] as defined in federal securities laws, is sufficient to encompass virtually any instrument that might be sold as an investment").

status, even if the district court is convinced that some other plaintiff would do a better job"). Although they challenge Mr. Wang's standing and typicality, the competing movants do not cite one case rejecting an ETF investor as lead plaintiff.  The dearth of case law addressing ETF movants makes sense: single-issuer, company-specific, or "single-stock" ETFs are a new product in the U.S. markets: the SEC granted approval to single-stock ETFs in July 2022.  Press Release, AXS Inv., *AXS Investments Launches First-Ever U.S. Suite of Single-Stock Leveraged Bull and Bear ETFs* (July 14, 2022), https://www.prnewswire.com/news-releases/axs-investments-launches-first-ever-us-suite-of-single-stock-leveraged-bull-and-bear-etfs-301586789.html.

[6] *See* Lai Family Trust Opp., ECF No. 51 at 11 (explaining that the Class is currently defined as "persons and entities that purchased or otherwise acquired Him securities"); Schalter Opp., ECF No. 53 at 4 ("The more inclusive Sookdeo Action defines the class as "persons and entities that purchased or otherwise acquired Hims securities").

Nevertheless, Lai Family Trust argues that Mr. Wang "is not part of the Class" because he "traded exclusively in ETFs during the Class Period and purchased *no common stock*."  *See* Lai Family Trust Opp., ECF No. 51 at 11.  Similarly, Schalter argues that Mr. Wang "lacks standing and is not a member of the class because he never purchased" Hims securities, and because "100% of his claimed losses derive from transactions *not in Hims stock*" but in HIMS ETF.  *See* Schalter Opp., ECF No. 53 at 2-3.  However, the competing movants can neither reconcile their arguments with the operative Class definition (purchasers of Hims *securities*, not common stock, *see* ECF No. 1 at 2, ¶ 1) nor with the Exchange Act definition of security (that includes any "security-based swap" or "put, call, straddle, option, or privilege *on* any security[,]" *see* 15 U.S.C. § 78c(10)). Purchasing Hims common stock is not a pre-requisite to appointment as Lead Plaintiff.  To qualify, an investor in Hims securities need only have the greatest financial interest among all competing movants and make a prima facie showing of typicality and adequacy, which Mr. Wang has done.

### 2. Courts Routinely Appoint Investors in Derivative Securities Like Mr. Wang as Lead Plaintiffs and Class Representatives

While Lai Family Trust and Schalter self-servingly prefer their own appointment as investors in Hims common stock (to the exclusion of HIMS ETF investors like Mr. Wang), courts regularly appoint investors in derivative securities as both lead plaintiffs and class representatives. Courts have long ruled that options investors have cognizable claims under the Exchange Act and associated standing.  *See*, *e.g.*, *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 154 n.9 (N.D. Cal. 1991) (making "explicit" that "options traders are covered by [Rule 10b-5]"); *In re Priceline.com Sec. Litig.*, 236 F.R.D. 89, 99 (D. Conn. 2006) (appointing options trader—whose interests were "sufficiently aligned with those of the class members"—as class representative in part because "[o]ptions traders and other traders of securities aside from the shares of stock themselves may use the fraud-on-the-market presumption of reliance absent special circumstances") (citing *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123-24 (S.D.N.Y. 2001)).

Beyond having cognizable Exchange Act claims and threshold standing, investors in non-common stock, derivative securities like swaps and options are routinely appointed as lead plaintiff. *See*, *e.g.*, *Hall v. Medicis Pharm. Corp.*, No. 08-cv-01821, 2009 WL 648626, at *4-6 (D. Ariz. Mar.

11, 2009) (appointing investor that "purchased and sold put options, as opposed to Defendants' underlying securities[,]" to represent "all purchasers of Medicis 'securities[,]'" including common stockholders); *Flora v. Hain Celestial Grp., Inc.*, No. 16-cv-4581, 2017 WL 11816987 (E.D.N.Y. June 5, 2017) (appointing options investor as co-lead plaintiff, in part because "the fact that [the options investor] only purchased options . . . does not rebut the presumption in its favor") (citing *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 355 (S.D.N.Y. 2011)); *In re Forcefield Energy Inc. Sec. Litig.*, No. 15-cv-3020, 2015 WL 4476345, at *4 (S.D.N.Y. July 22, 2015) (appointing movant that purchased warrants and notes, not shares on the open market); *Crocs*, 2008 WL 4298316, at *3-4 (appointing a lead plaintiff where the "vast majority" of its losses were in contracts for difference ("CFDs"); *E*Trade*, 2008 WL 2876373, at *8 (appointing "a purchaser of CFDs rather than common shares").[7]

Glick v. Arqit Quantum Inc.* is instructive, where a competing movant (like the competing movants here) sought to rebut the presumption favoring appointment of an investor that "purchased a significant amount of securities ***other than common stock***—*i.e.*, solely warrants."  666 F. Supp. 3d 222, 231 (E.D.N.Y. Mar. 31, 2023) (noting that, according to the competing movant, "warrant holders make up less than 15% of the total class, thus making the [presumptive lead plaintiff] an atypical representative").  The court was "not persuaded[,]" reasoning that, like here, the "proposed class members, including [the presumptive lead plaintiff,] purchased Arqit securities—***not [just] stocks***—during the relevant time period, acted in reliance on Defendants' material misrepresentations, and suffered financial losses as a result."  *Id.* at 232 (explaining that "'[a] lead plaintiff's claims need not be identical to the claims of the class, and similarity of legal theory may

---

[7] The competing movants' challenge to Mr. Wang's standing and typicality—purely because of his HIMS ETF investments—is surprising because both competing movants' counsel have represented options and warrants investors seeking appointment as lead plaintiff. *See, e.g., Abdul-Hameed v. Snap Inc.*, No. 25-cv-07844 (C.D. Cal.), ECF No. 1-1 (certification listing option transactions in securities class action filed by Lai Family Trust's counsel in August 2025), attached as Exhibit A to the Declaration of David R. Kaplan in Support of the Reply Memorandum of Law in Further Support of the Motion of Shuo-Hsien Wang ("Kaplan Reply Decl."); *In re Apple Inc. Sec. Litig.*, No. 19-cv-02033 (N.D. Cal.), ECF Nos. 20, 21-1 (motion and certification) (Kaplan Reply Decl., Ex. B); *In re Alphabet, Inc. Sec. Litig.*, No. 18-cv-06245 (N.D. Cal.), ECF Nos. 15, 16-1 (motion and certification) (Kaplan Reply Decl., Ex. C); *In re Stable Road Acquisition Corp. Sec. Litig.*, No. 21-cv-05744 (C.D. Cal.), ECF Nos. 38, 41-2 (motion and certification) (Kaplan Reply Decl., Ex. D); *Johnson v. Costco Wholesale Corp.*, No. 18-cv-01611 (W.D. Wash.), ECF Nos. 9, 10-1 (motion and certification) (Kaplan Reply Decl., Ex. E).

control even in the face of differences of fact'") (quoting *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, (E.D.N.Y. 2018)).  Similarly, in *Flora v. Hain Celestial Group, Inc.*, the court appointed a pure options investor as lead plaintiff, explaining that "the fact that Rosewood only purchased options during the class period does not rebut the presumption in its favor."  2017 WL 11816987, at *1 ("Investors who traded in options can be appointed lead plaintiff when the focus of the typicality analysis is, as here, whether the same or similar injuries arose out of or were caused by Defendants' alleged wrongful course of conduct").

Investors in non-common stock, derivative securities are also routinely appointed as class representatives under heightened scrutiny at the class certification stage.  *See, e.g.*, *Priceline.com*, 236 F.R.D. at 99 (appointing options trader as class representative); Settlement Notice and Final Order and Judgment, *ODS Capital LLC v. JA Solar Holdings Co., Ltd.*, No. 18-cv-12083 (S.D.N.Y. 2023), ECF Nos. 127-1, 131 (certifying settlement class of investors in JA Solar securities, including swaps investors) (Kaplan Reply Decl., Ex. F); *Deutschman v. Beneficial Corp.*, 841 F.2d 502, 503 (3d Cir. 1988) (reversing district court order that a "purchaser of call options on Beneficial stock" lacked "standing to sue" under the Exchange Act or "to act as a class representative for purchasers of such call options and for purchasers of Beneficial stock"); *see also* Don Chance, Onnig H. Dombalagian, Steven Feinstein, *The Class Certification of Exchange-Listed Options in Securities Class-Action Litigation*, 27 U. Pa. J. Bus. L. 71, 78 n. 32 (2024) (collecting cases).

*In re Adobe Systems, Inc. Securities Litigation* provides guidance on this point, where the court appointed two options traders as class representatives over defendants' standing objections, reasoning that "since the value of options is directly related to the value of common stock, defendants had reason to expect that options traders would rely on their alleged misrepresentations."  139 F.R.D. 150, 156 (N.D. Cal. 1991).  Similarly, the defendants in *In re Sepracor* argued (like the competing movants here) that, "as an options trader who did not own Sepracor common stock, [a proposed class representative was] ineligible to represent a class of stock purchasers."  233 F.R.D. 52, 56 (D. Mass. 2005).  The court appointed the class representative over defendants' objections, explaining that "purchasers of different types of securities have often been found qualified to represent purchasers of other types of securities of the same issuer."  *Id.*

Schalter's reliance on *Blue Chip Stamps* and *CCIV/Lucid*—for the proposition that Mr. Wang lacks standing unless he purchased "the stock in question" (*see* Schalter Opp., ECF No. 53 at 2, 5-6)—is misplaced.  Rather, as explained by the Third Circuit Court of Appeals in the seminal *Deutschman v. Beneficial Corp.*, "the only standing limitation recognized by the Supreme Court with respect to section 10(b) damage actions is the requirement that the plaintiff be **a purchaser or seller of a security**."  841 F.2d at 506 (*cert. denied*, 490 U.S. 1114 (1989)) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)).  The Third Circuit further expounded that "[the Supreme Court] expressly recognized that such plaintiffs need not be in any relationship of privity with the defendant charged with misrepresentation."  *Id.* (*citing Blue Chip Stamps*); *accord Adobe*, 139 F.R.D. at 155 (disagreeing with argument that options investor must have fiduciary relationship with issuer to have standing because "the value of options is directly related to the value of common stock").  Indeed, "the underlying purpose of the [Exchange] Act was the protection of actual participants in the securities markets," *Beneficial*, 841 F.2d at 506, and HIMS ETF investors clearly fall within the scope of this protection.  *See also id.* at 507 (rejecting defendants' challenges to options trader's standing because "[the Supreme Court] confined section 10(b) liability to members of the precise class for the protection of which the [Exchange] Act was enacted: participants in the national securities markets . . . . Options traders are participants in those markets").[8]

### 3.    Mr. Wang Would Not Expose the Class to Unique Defenses

Having established that Mr. Wang has cognizable Exchange Act claims and standing to represent the Class—and that courts regularly appoint similar derivative securities investors as both lead plaintiffs and class representatives—the competing movants' attack on Mr. Wang's typicality rings hollow.[9]  After all, the Rule 23 typicality analysis at the lead plaintiff stage focuses on whether Mr. Wang, like other Class members, suffered financial harm as a result of Defendants' Exchange

[8] *See also Shapiro v. TG Therapeutics, Inc.*, No. 22-cv-6106, 2022 WL 16555585, at *3 (S.D.N.Y. Oct. 31, 2022) (finding option trader's "losses from trading in . . . options . . . stem from the same course of events that caused other class members' losses . . . [and] relies on the same legal theory as all other claims" but declining appointment on other grounds).

[9] *See* Lai Family Trust Opp., ECF No. 51 at 12-15 ("his investments and transaction history render him atypical and vulnerable to unique defenses"); Schalter Opp., ECF No. 53 at 7 ("his claims would be highly atypical of the class which he seeks to represent. . . .  The Court should not subject the class to the multitude of unique defenses defendants will raise against" him).

Act violations.  *See Welgus v. Trinet Grp., Inc.*, No. 15-cv-3625, 2015 WL 7770222, at *3 (N.D. Cal. Dec. 3, 2015) (discussing the typicality requirement).  Mr. Wang satisfies this test.

Lai Family Trust and Schalter contrast their common stock purchases with Mr. Wang's HIMS ETF purchases as purported "evidence" of Mr. Wang's atypicality.  They both claim to have purchased stock following misleading statements and to have incurred losses upon disclosures of fraud.  Lai Family Trust Opp., ECF No. 51 at 9; Schalter Opp., ECF No. 53 at 9.  The ***same is true for Mr. Wang*** and his HIMS ETF investments.  The graph below shows that the HIMS ETF reacted uniformly with the underlying Hims common stock during the Class Period—both with respect to price and volume changes in response to Defendants' misrepresentations and the corrective disclosure at the end of the Class Period that removed artificial inflation from the securities' prices:



Accordingly, there is no "proof" that Mr. Wang would face any insurmountable challenge at the class certification stage.  Like all other Class members, Mr. Wang purchased Hims securities at artificially inflated prices and suffered damages when the corrective disclosures removed the inflation, which caused the price of the securities to fall.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as all other Class members' claims, satisfy the typicality requirements of Rule 23(a)(3).

A recent article in the University of Pennsylvania's *Journal of Business Law*, attributed

some courts' hesitancy to certify classes including options investors to "uncertainty as to how to gauge the informational efficiency" of markets for these securities. *See* 27 U. Pa. J. Bus. L. at 73. Just as it is a "generally accepted fact that an option price is a function of the underlying stock price," *id.* at 81, so too is the fact that the price of a company-specific, single-stock ETF is a function of the underlying stock price. *Id.* at 100-101. The graph above shows exactly this: the HIMS ETF tracked the performance of Hims common stock almost identically, and investors in both securities transacted uniformly based on information available in the market.[10] Moreover, to demonstrate market efficiency, "plaintiffs need not prove the correctness of the market price, but rather that the market price generally absorbs and reflects new public information, including publicly disseminated information." 27 U. Pa. J. Bus. L. at 81. The graph above shows that the market price for both securities absorbed and reflected new public information nearly identically.

Mr. Wang's claims are thus typical of any other Class member, each of whom claims to have lost money on their investments as a result of Defendants' Exchange Act violations.[11]

Dated: September 15, 2025                                     Respectfully submitted,

---

[10] The competing movants' authorities that reject non-common stock movants as atypical are all inapt. In *In re Stitch Fix, Inc. Securities Litigation*, the Court disqualified an investor that only *sold* put options, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019), whereas here there is no dispute that Mr. Wang *purchased* HIMS ETF shares during the Class Period. In *Applestein v. Medivation Inc.*, the court disqualified an investor that traded "naked-put option contracts" that are "even more speculative" than regular options. No. 10-cv-998, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010). The competing movants' other authorities are similarly unavailing. The court's concerns in *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.* were options-specific damages and loss causation issues stemming from their conditional value. No. 20-cv-368, 2021 WL 913934, at *5 (D. Utah Mar. 10, 2021). Here, the securities Mr. Wang purchased tracked Hims stock's price in real time, and their value was not conditional on any other factor. As in *Stitch Fix*, the court in *Di Scala v. ProShares Ultra Bloomberg Crude Oil* addressed a movant claiming losses from the sale of put options, which did not constitute a purchase or acquisition. No. 20-cv-5865, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020). Here, Mr. Wang *purchased* securities, and no one can credibly dispute that this fact makes him a class member. Similarly, in *Cook v. Allergan plc*, the court rejected a movant whose options selling strategy involved sales of both puts and calls. No. 18-cv-12089, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019).

[11] While there is no conflict between the claims of Mr. Wang and the Class, the tenor of the arguments advanced by the competing movants strongly suggests a material risk that, if either of the competing movants is appointed as Lead Plaintiff, they will exclude HIMS ETF investors from the Class (at the amended complaint stage, the class certification stage, or when allocating a recovery). The competing movants have no interest in advancing the claims of HIMS ETF investors as neither of them invested in this security. If the Court declines to appoint Mr. Wang as Lead Plaintiff to represent all Class members, Mr. Wang respectfully requests that the Court appoint Mr. Wang to lead a subclass for investors in the HIMS ETF and other investors in derivative securities to ensure the interests of these investors are protected.

_/s/ David R. Kaplan_

**SAXENA WHITE P.A.**
David R Kaplan (SBN 230144)
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Tel.: (858) 997-0860
Fax: (858) 369-0096
dkaplan@saxenawhite.com

Lester R. Hooker (SBN 241590)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
lhooker@saxenawhite.com

Marco A. Dueñas (_pro hac vice_ forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
mduenas@saxenawhite.com

_Counsel for Proposed Lead Plaintiff Shuo-Hsien Wang, and Proposed Lead Counsel for the Class_

REPLY MEM. ISO OF S. WANG'S
MOT. FOR APP'T AS LEAD PLAINTIFF
CASE NO. 3:25-cv-05315-JD

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on September 15, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel or parties of record.

*/s/ David R. Kaplan*
David R. Kaplan

REPLY MEM. ISO OF S. WANG'S
MOT. FOR APP'T AS LEAD PLAINTIFF
CASE NO. 3:25-cv-05315-JD