EXHIBIT B

**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 373-1671
Email: aapton@zlk.com

*Attorneys for Movant Richard Rodriguez*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, Individually and on behalf of all others similarly situated, <br><br> Plaintiff <br><br> vs. <br><br> APPLE INC., TIMOTHY D. COOK, and LUCA MAESTRI, <br><br> Defendants. | No. 4:19-cv-02033-YGR <br><br> Hon. Yvonne Gonzalez Rogers <br><br> **MOTION OF RICHARD RODRIGUEZ FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND MEMORANDUM AND POINTS OF AUTHORITIES** <br><br> Date: August 13, 2019 <br> Time: 2:00 p.m. <br> Courtroom: 1-4th Floor |
| PRIYAM REDDY, Individually and on behalf of all others similarly situated, <br><br> Plaintiff <br><br> vs. <br><br> APPLE INC., TIMOTHY D. COOK, and LUCA MAESTRI, <br><br> Defendants. | No. 3:19-cv-02615-LHK <br><br> Hon. Lucy H. Koh |

*[Caption Continued on Next Page]*

---

RICHARD RODQIGUEZ'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF LEAD COUNSEL
Nos. 4:19-cv-02033-YGR; 3:19-cv-02615-LHK; 3:19-cv-02891-JD

| | |
|---|---|
| STEAMFITTERS LOCAL 449 PENSION PLAN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>APPLE INC., TIMOTHY D. COOK, and LUCA MAESTRI,<br><br>Defendants. | No. 3:19-cv-02891-JD<br><br>Hon. James Donato |

## NOTICE OF MOTION AND MOTION

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE, that on July 10, 2019 at 2:00 p.m., or as soon as counsel may be heard, the undersigned will move before the Honorable Yvonne Gonzalez Rogers at the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 1 - 4th Floor, 1301 Clay Street, Oakland, CA 94612, pursuant to Rule 42 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, for an Order:

1.      Consolidating the related above-captioned actions (the "Actions")

2.      Appointing Richard Rodriguez ("Movant") as Lead Plaintiff;

3.      Approving Movant's choice of Levi & Korsinsky, LLP ("Levi & Korsinsky"), as Lead Counsel; and

4.      Granting such other and further relief as the Court may deem just and proper.

Movant respectfully submits the following memorandum in support of his motion for: (a) consolidation of the Actions; (b) appointment of Movant as Lead Plaintiff; and (c) approval of Levi & Korsinsky as Lead Counsel.

RICHARD RODQIGUEZ'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL
Nos. 4:19-cv-02033-YGR; 3:19-cv-02615-LHK; 3:19-cv-02891-JD

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

I.   SUMMARY OF ARGUMENT .................................................................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED ...................................................... 2

III. STATEMENT OF FACTS ....................................................................................... 2

IV.  ARGUMENT ............................................................................................................ 6

   A.  Consolidation of The Actions Is Appropriate ................................................... 6

   B.  Movant's Appointment as Lead Plaintiff is Appropriate .................................... 7

      1.  The Procedure Required by the PSLRA ....................................................... 7

         a.  Movant Is Willing to Serve as Class Representative ............................ 9

         b.  Movant Has the Largest Financial Interest in the Relief Sought By the Class ..... 9

      2.  Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil

        Procedure ....................................................................................................... 9

         a.  Movant's Claims are Typical of the Claims of all the Class Members ............... 10

         b.  Movant Will Adequately Represent the Class ........................................ 11

   C.  Approval of Movant's Choice of Counsel Is Appropriate ............................. 12

V.   CONCLUSION ..................................................................................................... 13

RICHARD RODQIGUEZ'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF LEAD COUNSEL
Nos. 4:19-cv-02033-YGR; 3:19-cv-02615-LHK; 3:19-cv-02891-JD

# TABLE OF AUTHORITIES

**Cases**

*Booth v. Strategic Realty Trust, Inc.*,

No. 13-cv-04921-JST, 2014 WL 342625 (N.D. Cal. Jan. 27, 2014)........................................ 9

*Burnett v. Rowzee*,

2007 U.S. Dist. LEXIS 89799 (C.D. Cal. Nov. 26, 2007) ....................................................... 7

*Crawford v. Honig,*

37 F.3d 485 (9th Cir. 1994) ................................................................................................. 11

*Ferrari v. Gisch,*

225 F.R.D. 599 (C.D. Cal. 2004)......................................................................................... 11

*Francisco v. Abengoa, S.A.,*

No. 15 CIV. 6279 (ER), 2016 WL 3004664 (S.D.N.Y. May 24, 2016) ............................... 13

*Gen. Tel. Co. of the Southwest v. Falcon,*

457 U.S. 147 (1982) ............................................................................................................ 11

*Gold v. Lumber Liquidators, Inc.,*

323 F.R.D. 280 (N.D. Cal. 2017) ........................................................................................ 11

*Hanlon v. Chrysler Corp.*,

150 F.3d 1011 (9th Cir. 1998) ............................................................................................. 11

*Haung v. Acterna Corp.,*

220 F.R.D. 255 (D. Md. 2004) ............................................................................................ 10

*Hessefort v. Super Micro Computer, Inc,*

317 F.Supp.3d 1056 (N.D. Cal. 2018)................................................................................. 10

Hufnagle v. Rino Int'l Corp.,

2011 U.S. Dist. LEXIS 19760 (C.D. Cal. Feb. 14, 2011) ....................................................... 7

*In re Cavanaugh*,

306 F.3d 726 (9th Cir. 2002) ...................................................................................... 1, 9, 10

*In re Drexel Burnham Lambert Grp.,*

iv

960 F.2d 285 (2d Cir. 1992) ............................................................................................ 11

*In re Gentiva Sec. Litig.*,

281 F.R.D. 108 (E.D.N.Y. 2012) ........................................................................................ 1

*In re LendingClub Sec. Litig.*,

282 F.Supp.3d 1171 (N.D. Cal. 2017) ............................................................................ 11

*In re Milestone Sci. Sec. Litig.*,

183 F.R.D. 404 (D.N.J. 1998) ......................................................................................... 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,

182 F.R.D. 42 (S.D.N.Y. 1998) ....................................................................................... 11

*Inchen Huang v. Depomed*, *Inc.*,

289 F. Supp. 3d 1050 (N.D. Cal. 2017) .......................................................................... 13

*Ind. State Dist. Council of Laborers & Hod Carriers Pension Fund v. Gecht*,

2007 U.S. Dist. LEXIS 26529 (N.D. Cal. Mar. 22, 2007) ................................................. 7

*Isaacs v. Musk,*

No. 18-CV-04865-EMC, 2018 WL 6182753  (N.D. Cal. Nov. 27, 2018), *reconsideration*

*denied sub nom. In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2018 WL 6609569

(N.D. Cal. Dec. 17, 2018) ............................................................................................... 12

*Levin v. Res. Capital Corp.*,

No. 15 CIV. 7081 (LLS), 2015 WL 7769291 (S.D.N.Y. Nov. 24, 2015) ........................... 13

Miami Police Relief & Pension Fund v. Fusion-io, Inc.,

2014 U.S. Dist. LEXIS 80141 (N.D. Cal. June 10, 2014) .................................................. 7

*Polat v. Regulus Therapeutics, Inc.*,

No. 3:17-cv-00182-BTM-RBB, 2017 U.S. Dist. LEXIS 177872 (S.D. Cal. Oct. 26, 2017) 13

*Pope v. Navient Corp.*,

No. CV 17-8373 (RBK/AMD), 2018 WL 672640 (D.N.J. Feb. 2, 2018) ........................... 13

*Robidoux v. Celani*,

987 F.2d 931 (2d Cir. 1993) ............................................................................................ 11

v

Shreves v. Xunlei Ltd.,

    2015 U.S. Dist. LEXIS 123745 (C.D. Cal. Sept. 15, 2015) ....................................................... 7

*Veal v. LendingClub Corporation,*

    2018 WL 5879645 (N.D. Cal. Nov. 7, 2018) ........................................................................ 10

*Weisz v. Calpine Corp.,*

    2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 19, 2002) ....................................................... 7

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A) ....................................................................................................... 8

15 U.S.C. § 78u-4(a)(3)(B)................................................................................................... passim

15 U.S.C. § 78u-4(a)(3)(B)(ii)................................................................................................... 7

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................................................... 1, 10, 11

Fed. R. Civ. P. 42(a) ................................................................................................................ 7

## I.   SUMMARY OF ARGUMENT

Presently pending before the Court are the three above-captioned securities class actions (the "Actions") brought on behalf of all persons who purchased, or otherwise acquired securities of Apple, Inc.  ("Apple" or the "Company") between August 1, 2017 through January 2, 2019, inclusive (the "Class Period").[1] Plaintiffs in the Actions allege violations of the Securities Exchange Act of 1934 (the "Exchange Act") against the Company, Timothy D. Cook ("Cook"), and Luca Maestri ("Maestri").[2]

The Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See generally In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). Richard Rodriguez ("Movant"), lost approximately $384,348.07 as a result of the alleged fraud during the Class Period.[3] Moreover, Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that his claims are typical of the claims of the Class, and he will fairly and adequately represent the

---

[1] The first filed action against the Defendants entitled *City of Roseville Employees' Retirement System v. Apple, Inc. et al.,* Case No. 4:19-cv-02033-YGR (the "*Roseville* Action") was filed in this Court on April 16, 2019 and proposes a Class Period between November 2, 2018 and January 2, 2019, inclusive. The additional complaints were also filed in this Court and are entitled *Priyam Reddy v. Apple, Inc. et al.,* Case No. 3:19-cv-02615-LHK (the "*Reddy* Action") which proposes a Class Period between November 2, 2018 and January 2, 2019, inclusive; and *Steamfitters Local 449 Pension Plan v. Apple, Inc. et al.,* Case No. 3:19-cv-02891-JD (the "*Steamfitters* Action") which proposes a Class Period between August 1, 2017, through January 2, 2019, inclusive. Movant adopts the longer Class Period, August 1, 2017 through January 2, 2019, inclusive, because it is the "larger, most inclusive class period". *In re Gentiva Sec. Litig*., 281 F.R.D. 108, 113 (E.D.N.Y. 2012) (finding the most inclusive class period proper in analyzing lead plaintiff motion).

[2] Specifically, Plaintiffs allege violations of Sections 10(b) and 20(a) of the Exchange Act and rule 10b-5 promulgated thereunder against defendants Cook (CEO of Apple and member of its Board of Directors); and Maestri (CFO of Apple).

[3] Movant's certification identifying his transactions in Apple, as required by the PSLRA, as well as a chart identifying his losses, are attached to the Declaration of Adam M. Apton, dated June 17, 2019 ("Apton Decl."), as Exhibits A and B, respectively.

---

RICHARD RODQIGUEZ'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF LEAD COUNSEL
Nos. 4:19-cv-02033-YGR; 3:19-cv-02615-LHK; 3:19-cv-02891-JD

interests of the Class.[4] As such, Movant meets the requirements of the PSLRA for appointment as Lead Plaintiff.

Accordingly, Movant respectfully request that (a) the Actions be consolidated; (b) he be appointed Lead Plaintiff; and (c) Levi & Korsinsky be approved as Lead Counsel.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Actions involve substantially similar issues of fact and law and should be consolidated;

2. Whether Movant meet the requirements under the PSLRA to be appointed Lead Plaintiff; and

3. Whether Movant's choice of Lead Counsel should be approved.

## III. STATEMENT OF FACTS

Apple is a multinational technology company headquartered in Cupertino, California that designs, develops, and sells consumer electronics, computer software, and online services. ¶ 2.[5] The multiple versions and models of Apple's iPhone have served as the Company's flagship product, generating approximately two-thirds of Apple's 2018 revenue. *Id.* Since its original launch in 2007 through 2015, the Company released, on average, one new iPhone model per year and aggressively increased the pricing of its iPhones from the $99-$399 range maintained through 2013 to a top offering price of $1,449 for the Apple XS Max with 512 gigabytes in September 2018. *Id.*

The Company and its products enjoy significant geographic reach, including in emerging markets. ¶ 4. Greater China, for example, is Apple's third-largest market after the United States and Europe, accounting for $52 billion in sales in Apple's fiscal year 2018 ("FY18"), ended September 29, 2018 – nearly 20% of Apple's total FY18 annual sales. *Id.* But, while China

---

[4] The "Class" is comprised of all persons who purchased, or otherwise acquired Apple securities during the Class Period.

[5] Citations to "¶" are to paragraphs of the Complaint for Violation of the Federal Securities Laws filed in the *Roseville* Action (the "*Roseville* Complaint"). The facts set forth in the *Roseville* Complaint are incorporated herein by reference.

2

represents the Company's highest growth market, China is also among its most competitive with upstart brands such as Huawei, Xiaomi and Oppo offering similar looking all-screen phones for much lower prices. *Id.* At the same time that Apple's iPhone sales revenues were growing in China due to Apple's outsized price increases, Chinese smartphone manufacturers were launching scores of much lower priced smartphones with greater advancements throughout the Chinese market, thus competing with Apple's iPhone offerings and diminishing the Company's pricing power. *Id.*

In addition, Apple's business in China is also more susceptible to geopolitical trade maneuvers by the United States and China, and, more recently, tariffs imposed by the United States have also threatened sales (though Apple has sought to deny or minimize any perceived impact). ¶ 5.

In the midst of the ongoing trade war between the United States and China, on September 12, 2018, Apple introduced three new phones: the iPhone XR (priced at $749/$799/$899), the iPhone XS (priced at $999/$1149), and the iPhone XS Max (priced at $1099/$1249/$1449). ¶ 6. Unlike the prior iPhone releases, the 2018 iPhones were not viewed as having significant technological advances beyond the iPhone X released in late 2017 (priced at $999/$1149). *Id.* The strength of the U.S. dollar and the high price of iPhones, combined with a declining Chinese economy, placed the iPhone out of reach of many Chinese consumers who might otherwise have upgraded – at the same time that many less expensive Chinese smartphones were flooding the market. ¶ 7. For instance, Huawei's P20 Pro sells for approximately $800 in China and Xiaomi's MIX 2S sells for approximately $500 in China. ¶ 6.

Making matters worse, in December 2017, Apple admitted that it had been intentionally degrading, or "throttling," the performance of the batteries in older iPhones via software "updates." This battery "throttling" had surreptitiously created artificial demand for new premium priced iPhones from consumers who believed their poorly performing iPhones were outdated and thus needed to be replaced. ¶ 8. In order to stymie customer outrage over its conduct, starting in January 2018, Apple dramatically cut the price of iPhone battery replacements from $79 to $29

RICHARD RODQIGUEZ'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL
Nos. 4:19-cv-02033-YGR; 3:19-cv-02615-LHK; 3:19-cv-02891-JD

"'for anyone with an iPhone 6 or later whose battery need[ed] to be replaced, available worldwide through December 2018'" – right as Apple would be debuting its three new iPhones.

Notwithstanding the impact of slowing economic growth in China, geopolitical pressures caused by U.S.-China sales tariffs, and the Company's ability to compel unnecessary iPhone upgrades on customers, Apple issued a series of materially false and misleading statements in November 2018 concerning demand for iPhones and Apples pricing power for its hardware offerings, including its new iPhones launched in September 2018, in particular in China. ¶ 9. For example, on November 1, 2018, Apple reported its fourth quarter and FY18 financial results for the period ended September 29, 2018 and boasted that "'[o]ver the past two months, [it had] delivered huge advancements for [its] customers through new versions of iPhone, Apple Watch, iPad and Mac as well as [its] four operating systems,'" and that as a result, it had "'enter[ed] the holiday season with [its] strongest lineup of products and services ever.'" *Id.* Accordingly, based in large part on this lineup of products, on November 1, 2018 – more than one-third of the way through Apple's first quarter of 2019 ("1Q19") – Apple set its 1Q19 revenue expectations in a range of $89 billion to $93 billion and its gross profit margins at 38% to 38.5%. *Id.*

During a conference call for analysts and investors held later that same evening, when asked whether the U.S.-China trade tariffs and trade tariff threats were having any impact on demand for iPhones in China, defendant Cook assured investors that the only "emerging markets that [Apple was] seeing pressure in [were] markets like Turkey, India, Brazil, [and] Russia . . . where currencies ha[d] weakened." ¶ 10. Cook added, however,"[i]n relation to China specifically, I would not put China in that category. Our business in China was very strong last quarter. We grew 16%, which we're very happy with. iPhone, in particular, was very strong doubledigit growth there." *Id.*

In addition to the Company's 1Q19 financial outlook, during the November 1, 2018 conference call, the Company surprised investors by announcing that Apple would no longer disclose unit sales for iPhones and other hardware, asserting that such data was no longer relevant for investors to evaluate the Company's financial performance, all the while assuring investors

4

that despite the decision to withhold unit sales data, as in the past, the Company would still experience strong performance. ¶ 11.

Then on January 2, 2019, after the close of trading, Apple shocked the market when it disclosed the true state of its actual 1Q19 iPhone sales, particularly in China. ¶ 14. For the first time during Cook's tenure as Chief Executive Officer ("CEO"), Apple would miss its public revenue projections and the miss was up to $9 billion. *Id.* The Company would admit that in addition to macroeconomics in the Chinese market, the price cuts to battery replacements a year earlier to fix the Company's prior surreptitious conduct had hurt iPhone sales. *Id.* In a "Letter from Tim Cook to Apple Investors" released after the close of trading, the Company explained as follows:

**Emerging Market Challenges**

While we anticipated some challenges in key emerging markets, *we did not foresee the magnitude of the economic deceleration, particularly in Greater China. In fact, most of our revenue shortfall to our guidance, and over 100 percent of our year-over-year worldwide revenue decline, occurred in Greater China* across iPhone, Mac and iPad.

*China's economy began to slow in the second half of 2018.* The government-reported GDP growth during the September quarter was the second lowest in the last 25 years. We believe the economic environment in China has been further impacted by rising trade tensions with the United States. As the climate of mounting uncertainty weighed on financial markets, the effects appeared to reach consumers as well, with traffic to our retail stores and our channel partners in China declining as the quarter progressed. And market data has shown that the contraction in Greater China's smartphone market has been particularly sharp.

\* \* \*

**iPhone**

Lower than anticipated iPhone revenue, primarily in Greater China, accounts for all of our revenue shortfall to our guidance and for much more than our entire year-over-year revenue decline. . . .

While Greater China and other emerging markets accounted for the vast majority of the year-over-year iPhone revenue decline, in some developed markets, *iPhone upgrades also were not as strong as we thought they would be*. While

5

RICHARD RODQIGUEZ'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL
Nos. 4:19-cv-02033-YGR; 3:19-cv-02615-LHK; 3:19-cv-02891-JD

macroeconomic challenges in some markets were a key contributor to this trend, we *believe there are other factors broadly impacting our iPhone performance, including consumers adapting to a world with fewer carrier subsidies, US dollar strength-related price increases, and some customers taking advantage of significantly reduced pricing for iPhone battery replacements.*

This news caused the market price of Apple common stock to plunge, closing down more than $15 per share, or more than 9%, from its close of $157.92 per share on January 2, 2019 to close at $142.19 per share on January 3, 2019, on unusually high volume of more than 90 million shares traded. ¶ 15.

Throughout the Class Period, Defendants made statements that were materially false and misleading when made because defendants knew and failed to disclose or deliberately disregarded: (a) that the U.S.-China trade war had negatively impacted demand for iPhones and Apple's pricing power in greater China, one of Apple's most important growth markets; (b) that the rate at which Apple customers were replacing their batteries in older iPhones rather than purchasing new iPhones was negatively impacting Apple's iPhone sales growth; (c) that, as a result of slowing demand, Apple had slashed production orders from suppliers for the new 2018 iPhone models and cut prices to reduce inventory; (d) that unit sales for iPhone and other hardware was relevant to investors and the Company's financial performance, and the decision to withhold such unit sales was designed to and would mask declines in unit sales of the Company's flagship product; and (e) that, as a result of the foregoing, defendants lacked a reasonable basis in fact when issuing the Company's revenue outlook for 1Q19 and/or making the related statements concerning demand for its products, as Apple's business metrics and financial prospects were not as strong as defendants had led the market to believe. ¶ 12.

## IV.    ARGUMENT

### A.  Consolidation of The Actions Is Appropriate

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  Thereafter, the Court "shall

6

appoint the most adequate plaintiff for the consolidated actions." *Id*.

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1132-33 (C.D. Cal. 1999); *see also Burnett v. Rowzee*, 2007 U.S. Dist. LEXIS 89799, at *5 (C.D. Cal. Nov. 26, 2007) ("The threshold issue [in determining consolidation] is whether the two proceedings involve a common party and common issues of fact or law." (citation omitted)); *Ind. State Dist. Council of Laborers & Hod Carriers Pension Fund v. Gecht*, 2007 U.S. Dist. LEXIS 26529, at *5 (N.D. Cal. Mar. 22, 2007) ("[T]he main question for a court in deciding whether to consolidate is whether there is a common question of law or fact."). Consolidation is particularly appropriate in securities class action litigation. *See Hufnagle v. Rino Int'l Corp.*, 2011 U.S. Dist. LEXIS 19760, (C.D. Cal. Feb. 14, 2011); *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 U.S. Dist. LEXIS 80141 (N.D. Cal. June 10, 2014); *Shreves v. Xunlei Ltd.*, 2015 U.S. Dist. LEXIS 123745 (C.D. Cal. Sept. 15, 2015). Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements. *See, e.g.*, *Weisz v. Calpine Corp.*, No. 02-cv-1200, 2002 U.S. Dist. LEXIS 27831, at *7-8 (N.D. Cal. Aug. 19, 2002); *Takeda*, 67 F. Supp. 2d at 1132-33 (consolidation appropriate in securities class actions).

The Actions pending before this Court present similar factual and legal issues, as they each involve the same subject matter and are based on the same wrongful course of conduct. Each names Apple and certain of its officers and/or directors as defendants. Because the Actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions. Accordingly, consolidation under Rule 42(a) is appropriate. *See Burnett*, 2007 U.S. Dist. LEXIS 89799, at *2.

**B. Movant's Appointment as Lead Plaintiff is Appropriate**

**1. The Procedure Required by the PSLRA**

The PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as

7

practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a) and (a)(3)(B).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa)　has either filed the complaint or made a motion in response to a notice;
>
> (bb)　in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)　otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that the defendants could raise against him. Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed Lead Plaintiff in the Actions.

### a. Movant Is Willing to Serve as Class Representative

On April 16, 2019 counsel in the first-filed action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class action had been filed against Apple and the Individual Defendants, and which advised putative class members that they had 60 days to file a motion to seek appointment as a lead plaintiff in the action. Movant has reviewed the complaint filed in the pending action and has timely filed his motion pursuant to the Notice.

### b. Movant Has the Largest Financial Interest in the Relief Sought By the Class

The Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Apton Decl., Ex. B. The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *Booth v. Strategic Realty Trust, Inc.*, No. 13-cv-04921-JST, 2014 WL 342625, at *1-2 (N.D. Cal. Jan. 27, 2014) (citing *In re Cavanaugh*, 306 F.3d at 726-30).

Within the Class Period, Movant transacted in Apple securities in reliance upon the materially false and misleading statements issued by the defendants and was injured thereby. Movant suffered a substantial loss of approximately $384,348.07. *See* Apton Decl., Ex. B. Movant thus has a significant financial interest in the outcome of this case. To the best of his knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### 2. Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party

9

may serve as a class representative if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification outlined in Fed. R. Civ. P. 23, only two – typicality and adequacy – are recognized as appropriate for consideration at this stage. *See Hessefort v. Super Micro Computer, Inc,* 317 F.Supp.3d 1056, 1060-61 (N.D. Cal. 2018); *Veal v. LendingClub Corporation,* 2018 WL 5879645, *4 (N.D. Cal. Nov. 7, 2018); *See also Cavanaugh,* 306 F.3d at 730, n.5, 732. Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage. *See USBH Holdings, Inc.* 682 F. Supp.2d at, 1053. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Cavanaugh,* 306 F.3d at 732; *see also Haung v. Acterna Corp.,* 220 F.R.D. 255, 259 (D. Md. 2004); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying his appointment as Lead Plaintiff.

### a. Movant's Claims are Typical of the Claims of all the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." Movant plainly meets the typicality requirement of Rule 23 because: (i) he suffered the same injuries as the absent class members; (ii) he suffered as a result of the same course of conduct by Defendants; and (iii) his claims are based on the same legal issues. *See In re Twitter, Inc. Sec. Litig.,* 326 F.R.D. 619, 629 (N.D. Cal. 2018); *see also Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In re Oxford*

10

*Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which the other class members' claims and injuries arise"). Rule 23 does not require that the named plaintiff be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See In re LendingClub Sec. Litig.,* 282 F.Supp.3d 1171, 1179 (N.D. Cal. 2017) (citing *Hanlon,* 150 F.3d at 1020.)  A finding of commonality frequently supports a finding of typicality. *See Gold v. Lumber Liquidators, Inc.,* 323 F.R.D. 280, 288 (N.D. Cal. 2017) (citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge)).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with the claims of the other Class members. Movant, like the other members of the Class, purchased Apple securities during the Class Period at prices artificially inflated by the defendants' materially false and misleading statements, and were damaged thereby. Thus, his claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and his losses result from the defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See In re LendingClub*, 282 F.Supp.3d at 1179; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### b.  Movant Will Adequately Represent the Class

Moreover, Movant is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B); *see Crawford v. Honig,* 37 F.3d 485, 487 (9th Cir. 1994) (citation omitted).

Movant's interests are clearly aligned with those of the other members of the Class. Not

11

only is there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a significant and compelling interest in prosecuting the Actions based on the large financial losses he has suffered as a result of the wrongful conduct alleged in the Actions. This motivation, combined with Movant's identical interest with the members of the Class, demonstrates that Movant will vigorously pursue the interests of the Class. In addition, Movant has retained counsel highly experienced in prosecuting securities class actions and will submit his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). Therefore, Movant will prosecute the Actions vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In addition, because Movant has sustained the largest amount of losses from the defendants' alleged wrongdoing, he is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I) and should be appointed as such to lead the Actions.

### C. Approval of Movant's Choice of Counsel Is Appropriate

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class. Levi & Korsinsky has extensive experience in successfully prosecuting complex securities class actions such as these and is well-qualified to represent the Class. *See* Apton Decl., Ex. D (the firm resume of Levi & Korsinsky). *See Isaacs v. Musk,* No. 18-CV-04865-EMC, 2018 WL 6182753, at *4 (N.D. Cal. Nov. 27, 2018), *reconsideration denied sub nom. In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2018 WL 6609569 (N.D. Cal. Dec. 17, 2018) (noting Levi & Korsinsky "is experienced in securities fraud litigation and has been appointed Lead Counsel in other securities class actions."); *Francisco v. Abengoa, S.A.,* No. 15 CIV. 6279 (ER), 2016 WL

12

3004664, at *7 (S.D.N.Y. May 24, 2016) (noting that given "Levi & Korsinsky's track record, the Court, like many others in this Circuit before it, concludes that the firm is qualified to serve as lead counsel of the class"); *Levin v. Res. Capital Corp.*, No. 15 CIV. 7081 (LLS), 2015 WL 7769291, at *2 (S.D.N.Y. Nov. 24, 2015) (appointing Levi Korsinsky as lead counsel and noting that it is "a firm which is well qualified and has successfully served as lead counsel or co-lead counsel in numerous complex securities class actions"); *Pope v. Navient Corp.*, No. CV 17-8373 (RBK/AMD), 2018 WL 672640, at *5 (D.N.J. Feb. 2, 2018) (appointing Levi & Korsinsky as lead counsel as it "is clearly capable of handling this matter—the firm has extensive experience in private securities litigation and has received numerous favorable judgments in its past representations."); *see also Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1055 (N.D. Cal. 2017) (appointing Levi Korsinsky as lead counsel); *Polat v. Regulus Therapeutics, Inc.*, No. 3:17-cv-00182-BTM-RBB, 2017 U.S. Dist. LEXIS 177872, at *3 (S.D. Cal. Oct. 26, 2017) (same).

## V. CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) consolidate the Actions; (2) appoint Movant as Lead Plaintiff for the Class in the Action; and (3) approve Levi & Korsinsky as Lead Counsel for the Class.

Dated: June 17, 2019                    Respectfully submitted,

                                        **LEVI & KORSINSKY, LLP**

                                        /s/ Adam M. Apton
                                        Adam M. Apton (SBN 316506)
                                        44 Montgomery Street, Suite 650
                                        San Francisco, CA 94104
                                        Tel: (415) 373-1671
                                        Email: aapton@zlk.com

                                        *Attorneys for Movant Richard Rodriguez and Proposed Lead Counsel for the Class*

13

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, Richard Rodriguez , duly certify and say, as to the claims asserted under the federal securities laws, that:

1. I have reviewed a complaint filed in the action(s) and adopt its allegations. I have authorized the filing of a motion for appointment as lead plaintiff.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transaction(s) in Apple Inc. which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto.

5. Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this June 12, 2019.


  Name: Richard Rodriguez

Signed:

**Richard Rodriguez**
**Transactions in APPLE INC. (AAPL) Securities**
**Class Period: 08/01/2017 and 01/02/2019, inclusive**
Buy (B), Sell (S), Sell to Open (SO), Buy to Open (BO), Sell to Close (SC), Buy to Close (BC)

| Date of Transaction | Transaction Type | Quantity | Security | Price ($) |
|---|---|---|---|---|
| 10/20/2017 | BO | 1 | AAPL Jun 15 2018 150.0 Call | 16.70 |
| 10/20/2017 | BO | 19 | AAPL Jun 15 2018 150.0 Call | 16.70 |
| 11/15/2017 | BO | 13 | AAPL Jun 15 2018 150.0 Call | 25.00 |
| 12/4/2017 | SC | (33) | AAPL Jun 15 2018 150.0 Call | 26.20 |
| 12/20/2017 | BO | 40 | AAPL Jan 18 2019 175.0 Call | 17.65 |
| 12/20/2017 | BO | 10 | AAPL Jan 18 2019 175.0 Call | 17.65 |
| 12/26/2017 | BO | 5 | AAPL Jan 18 2019 175.0 Call | 16.70 |
| 12/26/2017 | BO | 5 | AAPL Jan 18 2019 175.0 Call | 15.90 |
| 12/26/2017 | BO | 1 | AAPL Jan 18 2019 175.0 Call | 15.60 |
| 2/2/2018 | BO | 61 | AAPL Jan 18 2019 175.0 Call | 11.75 |
| 2/2/2018 | BO | 20 | AAPL Jan 18 2019 175.0 Call | 11.30 |
| 2/22/2018 | SC | (142) | AAPL Jan 18 2019 175.0 Call | 15.15 |
| 2/23/2018 | BO | 141 | AAPL Jan 18 2019 175.0 Call | 16.45 |
| 3/9/2018 | BO | 10 | AAPL Mar 16 2018 182.5 Call | 0.65 |
| 3/12/2018 | SC | (10) | AAPL Mar 16 2018 182.5 Call | 1.40 |
| 5/7/2018 | SC | (141) | AAPL Jan 18 2019 175.0 Call | 20.25 |
| 5/10/2018 | BO | 5 | AAPL Jun 8 2018 182.5 Put | 2.20 |
| 5/10/2018 | BO | 4 | AAPL Jun 8 2018 190.0 Put | 4.40 |
| 5/21/2018 | SC | (5) | AAPL Jun 8 2018 182.5 Put | 0.93 |
| 5/21/2018 | SC | (4) | AAPL Jun 8 2018 190.0 Put | 3.65 |
| 5/21/2018 | BO | 50 | AAPL Jan 18 2019 175.0 Call | 22.20 |
| 5/21/2018 | BO | 60 | AAPL Jan 18 2019 175.0 Call | 22.20 |
| 5/21/2018 | BO | 10 | AAPL Jun 1 2018 190.0 Call | 1.74 |
| 5/21/2018 | BO | 20 | AAPL Jun 1 2018 190.0 Call | 1.82 |
| 5/21/2018 | BO | 15 | AAPL Jun 1 2018 190.0 Call | 1.20 |
| 5/24/2018 | BO | 40 | AAPL Jun 1 2018 190.0 Call | 0.68 |
| 5/25/2018 | BO | 5 | AAPL Jun 22 2018 180.0 Call | 10.50 |
| 5/25/2018 | BO | 20 | AAPL Jun 8 2018 195.0 Call | 0.39 |
| 5/30/2018 | SC | (85) | AAPL Jun 1 2018 190.0 Call | 0.22 |
| 6/4/2018 | SC | (20) | AAPL Jun 8 2018 195.0 Call | 0.91 |
| 6/6/2018 | SC | (5) | AAPL Jun 22 2018 180.0 Call | 13.85 |
| 6/6/2018 | BO | 40 | AAPL Jun 8 2018 195.0 Call | 0.40 |
| 6/6/2018 | SC | (40) | AAPL Jun 8 2018 195.0 Call | 0.45 |
| 6/7/2018 | BO | 25 | AAPL Jun 15 2018 195.0 Call | 1.13 |
| 6/7/2018 | SC | (25) | AAPL Jun 15 2018 195.0 Call | 1.32 |
| 6/8/2018 | BO | 30 | AAPL Jun 29 2018 195.0 Call | 1.60 |
| 6/8/2018 | BO | 25 | AAPL Jun 15 2018 195.0 Call | 0.52 |
| 6/12/2018 | SC | (25) | AAPL Jun 15 2018 195.0 Call | 0.40 |
| 6/13/2018 | BO | 16 | AAPL Jun 22 2018 197.5 Call | 0.51 |
| 6/13/2018 | SC | (16) | AAPL Jun 22 2018 197.5 Call | 0.42 |
| 6/13/2018 | BO | 16 | AAPL Jun 22 2018 197.5 Call | 0.38 |
| 6/22/2018 | Option Expired | (16) | AAPL Jun 22 2018 197.5 Call | 0.00 |
| 6/27/2018 | SC | (30) | AAPL Jun 29 2018 195.0 Call | 0.02 |
| 8/1/2018 | SC | (110) | AAPL Jan 18 2019 175.0 Call | 28.25 |
| 8/2/2018 | BO | 30 | AAPL Sep 21 2018 200.0 Put | 3.30 |
| 8/2/2018 | BO | 30 | AAPL Sep 21 2018 200.0 Put | 2.90 |
| 8/2/2018 | BO | 20 | AAPL Aug 10 2018 205.0 Call | 0.93 |
| 8/2/2018 | SC | (20) | AAPL Aug 10 2018 205.0 Call | 1.40 |

| | | | | |
|---|---|---|---|---|
| 8/2/2018 | BO | 40 | AAPL Aug 10 2018 205.0 Call | 1.56 |
| 8/2/2018 | SC | (40) | AAPL Aug 10 2018 205.0 Call | 1.66 |
| 8/2/2018 | BO | 60 | AAPL Aug 10 2018 205.0 Call | 1.85 |
| 8/2/2018 | SC | (60) | AAPL Aug 10 2018 205.0 Call | 2.30 |
| 8/2/2018 | BO | 58 | AAPL Aug 10 2018 205.0 Call | 3.18 |
| 8/2/2018 | BO | 2 | AAPL Aug 10 2018 205.0 Call | 3.17 |
| 8/2/2018 | SC | (60) | AAPL Aug 10 2018 205.0 Call | 2.89 |
| 8/2/2018 | BO | 60 | AAPL Aug 10 2018 205.0 Call | 3.35 |
| 8/2/2018 | SC | (60) | AAPL Aug 10 2018 205.0 Call | 3.40 |
| 8/2/2018 | BO | 108 | AAPL Aug 10 2018 207.5 Call | 2.18 |
| 8/2/2018 | BO | 12 | AAPL Aug 10 2018 207.5 Call | 2.17 |
| 8/2/2018 | SC | (118) | AAPL Aug 10 2018 207.5 Call | 1.73 |
| 8/2/2018 | SC | (2) | AAPL Aug 10 2018 207.5 Call | 1.84 |
| 8/2/2018 | BO | 97 | AAPL Aug 10 2018 210.0 Call | 1.78 |
| 8/2/2018 | BO | 23 | AAPL Aug 10 2018 210.0 Call | 1.77 |
| 8/2/2018 | SC | (120) | AAPL Aug 10 2018 210.0 Call | 1.40 |
| 8/3/2018 | BO | 20 | AAPL Sep 21 2018 190.0 Put | 1.18 |
| 8/3/2018 | SC | (60) | AAPL Sep 21 2018 200.0 Put | 3.20 |
| 8/3/2018 | BO | 80 | AAPL Aug 10 2018 210.0 Call | 0.90 |
| 8/3/2018 | SC | (73) | AAPL Aug 10 2018 210.0 Call | 0.99 |
| 8/3/2018 | BO | 10 | AAPL Aug 10 2018 210.0 Call | 1.52 |
| 8/3/2018 | BO | 10 | AAPL Aug 10 2018 210.0 Call | 1.51 |
| 8/3/2018 | BO | 10 | AAPL Aug 10 2018 210.0 Call | 1.34 |
| 8/3/2018 | BO | 5 | AAPL Aug 10 2018 210.0 Call | 1.03 |
| 8/3/2018 | SC | (7) | AAPL Aug 10 2018 210.0 Call | 1.00 |
| 8/6/2018 | SC | (35) | AAPL Aug 10 2018 210.0 Call | 0.58 |
| 8/9/2018 | BO | 20 | AAPL Sep 21 2018 190.0 Put | 0.70 |
| 8/9/2018 | BO | 30 | AAPL Aug 17 2018 210.0 Call | 1.47 |
| 8/9/2018 | BO | 10 | AAPL Aug 17 2018 210.0 Call | 1.31 |
| 8/9/2018 | BO | 10 | AAPL Aug 17 2018 210.0 Call | 1.06 |
| 8/9/2018 | SC | (50) | AAPL Aug 17 2018 210.0 Call | 1.58 |
| 8/10/2018 | BO | 20 | AAPL Aug 24 2018 212.5 Call | 0.80 |
| 8/13/2018 | SC | (20) | AAPL Aug 24 2018 212.5 Call | 1.50 |
| 8/14/2018 | BO | 30 | AAPL Aug 24 2018 212.5 Call | 1.29 |
| 8/14/2018 | BO | 10 | AAPL Aug 24 2018 212.5 Call | 1.06 |
| 8/14/2018 | BO | 10 | AAPL Aug 24 2018 212.5 Call | 0.94 |
| 8/14/2018 | BO | 10 | AAPL Aug 24 2018 212.5 Call | 0.99 |
| 8/15/2018 | SC | (40) | AAPL Sep 21 2018 190.0 Put | 0.74 |
| 8/15/2018 | BO | 10 | AAPL Aug 24 2018 212.5 Call | 1.00 |
| 8/15/2018 | BO | 10 | AAPL Aug 24 2018 212.5 Call | 0.97 |
| 8/16/2018 | SC | (21) | AAPL Aug 24 2018 212.5 Call | 2.20 |
| 8/16/2018 | SC | (59) | AAPL Aug 24 2018 212.5 Call | 2.19 |
| 8/16/2018 | BO | 20 | AAPL Aug 24 2018 217.5 Call | 0.60 |
| 8/16/2018 | BO | 20 | AAPL Aug 24 2018 217.5 Call | 0.63 |
| 8/16/2018 | SC | (38) | AAPL Aug 24 2018 217.5 Call | 0.65 |
| 8/16/2018 | SC | (2) | AAPL Aug 24 2018 217.5 Call | 0.66 |
| 8/16/2018 | BO | 100 | AAPL Jun 21 2019 215.0 Call | 17.50 |
| 8/16/2018 | SC | (100) | AAPL Jun 21 2019 215.0 Call | 17.88 |
| 8/17/2018 | BO | 10 | AAPL Aug 24 2018 210.0 Put | 0.38 |
| 8/17/2018 | BO | 40 | AAPL Aug 31 2018 222.5 Call | 0.58 |
| 8/17/2018 | SC | (40) | AAPL Aug 31 2018 222.5 Call | 1.37 |
| 8/17/2018 | BO | 30 | AAPL Aug 31 2018 225.0 Call | 0.66 |
| 8/17/2018 | SC | (30) | AAPL Aug 31 2018 225.0 Call | 0.59 |
| 8/17/2018 | BO | 100 | AAPL Jun 21 2019 215.0 Call | 19.08 |
| 8/17/2018 | BO | 4 | AAPL Jun 21 2019 215.0 Call | 18.59 |
| 8/17/2018 | BO | 6 | AAPL Jun 21 2019 215.0 Call | 18.57 |

| Date | Action | Qty | Description | Price |
|---|---|---|---|---|
| 8/17/2018 | BO | 10 | AAPL Jun 21 2019 215.0 Call | 18.56 |
| 8/17/2018 | SC | (120) | AAPL Jun 21 2019 215.0 Call | 20.60 |
| 8/20/2018 | SC | (10) | AAPL Aug 24 2018 210.0 Put | 0.34 |
| 8/20/2018 | BO | 15 | AAPL Feb 15 2019 220.0 Call | 11.90 |
| 8/20/2018 | BO | 80 | AAPL Jun 21 2019 220.0 Call | 16.90 |
| 8/20/2018 | BO | 7 | AAPL Jun 21 2019 220.0 Call | 16.70 |
| 8/21/2018 | BO | 30 | AAPL Aug 31 2018 220.0 Call | 1.29 |
| 8/21/2018 | SC | (30) | AAPL Aug 31 2018 220.0 Call | 1.36 |
| 8/21/2018 | BO | 30 | AAPL Aug 31 2018 222.5 Call | 0.64 |
| 8/21/2018 | SC | (30) | AAPL Aug 31 2018 222.5 Call | 0.65 |
| 8/21/2018 | SC | (15) | AAPL Feb 15 2019 220.0 Call | 12.30 |
| 8/21/2018 | BO | 5 | AAPL Jun 21 2019 220.0 Call | 16.10 |
| 8/21/2018 | SC | (92) | AAPL Jun 21 2019 220.0 Call | 17.32 |
| 8/21/2018 | BO | 30 | AAPL Sep 21 2018 225.0 Call | 1.55 |
| 8/21/2018 | SC | (30) | AAPL Sep 21 2018 225.0 Call | 1.49 |
| 8/22/2018 | BO | 10 | AAPL Aug 31 2018 210.0 Put | 0.71 |
| 8/22/2018 | BO | 51 | AAPL Jun 21 2019 220.0 Call | 16.35 |
| 8/22/2018 | BO | 29 | AAPL Jun 21 2019 220.0 Call | 16.33 |
| 8/22/2018 | SC | (80) | AAPL Jun 21 2019 220.0 Call | 16.45 |
| 8/23/2018 | BO | 14 | AAPL Jun 21 2019 220.0 Call | 16.45 |
| 8/23/2018 | BO | 86 | AAPL Jun 21 2019 220.0 Call | 16.40 |
| 8/23/2018 | SC | (100) | AAPL Jun 21 2019 220.0 Call | 16.60 |
| 8/23/2018 | BO | 8 | AAPL Jun 21 2019 220.0 Call | 16.62 |
| 8/23/2018 | BO | 26 | AAPL Jun 21 2019 220.0 Call | 16.61 |
| 8/23/2018 | BO | 6 | AAPL Jun 21 2019 220.0 Call | 16.50 |
| 8/23/2018 | BO | 10 | AAPL Jun 21 2019 220.0 Call | 16.55 |
| 8/23/2018 | BO | 30 | AAPL Sep 21 2018 227.5 Call | 0.71 |
| 8/23/2018 | BO | 60 | AAPL Sep 21 2018 227.5 Call | 0.74 |
| 8/23/2018 | SC | (90) | AAPL Sep 21 2018 227.5 Call | 0.86 |
| 8/23/2018 | BO | 21 | AAPL Sep 21 2018 227.5 Call | 0.74 |
| 8/23/2018 | BO | 19 | AAPL Sep 21 2018 227.5 Call | 0.73 |
| 8/23/2018 | BO | 80 | AAPL Sep 21 2018 227.5 Call | 0.79 |
| 8/23/2018 | BO | 20 | AAPL Sep 21 2018 227.5 Call | 0.75 |
| 8/23/2018 | BO | 20 | AAPL Sep 21 2018 227.5 Call | 0.66 |
| 8/23/2018 | BO | 10 | AAPL Sep 21 2018 227.5 Call | 0.66 |
| 8/24/2018 | SC | (10) | AAPL Aug 31 2018 210.0 Put | 0.36 |
| 8/24/2018 | BO | 40 | AAPL Jun 21 2019 220.0 Call | 16.49 |
| 8/24/2018 | BO | 40 | AAPL Jun 21 2019 220.0 Call | 16.66 |
| 8/24/2018 | SC | (22) | AAPL Jun 21 2019 220.0 Call | 17.01 |
| 8/24/2018 | SC | (108) | AAPL Jun 21 2019 220.0 Call | 17.00 |
| 8/24/2018 | BO | 40 | AAPL Sep 21 2018 227.5 Call | 0.58 |
| 8/27/2018 | BO | 80 | AAPL Jun 21 2019 220.0 Call | 17.70 |
| 8/27/2018 | BO | 20 | AAPL Jun 21 2019 220.0 Call | 17.35 |
| 8/27/2018 | BO | 50 | AAPL Jun 21 2019 220.0 Call | 17.70 |
| 8/27/2018 | BO | 40 | AAPL Sep 7 2018 222.5 Call | 0.64 |
| 8/28/2018 | SC | (27) | AAPL Jun 21 2019 220.0 Call | 18.42 |
| 8/28/2018 | SC | (123) | AAPL Jun 21 2019 220.0 Call | 18.40 |
| 8/28/2018 | BO | 140 | AAPL Jun 21 2019 220.0 Call | 19.00 |
| 8/28/2018 | SC | (140) | AAPL Jun 21 2019 220.0 Call | 19.00 |
| 8/28/2018 | SC | (210) | AAPL Sep 21 2018 227.5 Call | 0.99 |
| 8/28/2018 | BO | 20 | AAPL Sep 21 2018 230.0 Call | 0.81 |
| 8/28/2018 | SC | (40) | AAPL Sep 7 2018 222.5 Call | 0.98 |
| 8/29/2018 | BO | 100 | AAPL Jun 21 2019 230.0 Call | 16.10 |
| 8/29/2018 | SC | (19) | AAPL Sep 21 2018 230.0 Call | 0.88 |
| 8/29/2018 | SC | (1) | AAPL Sep 21 2018 230.0 Call | 0.87 |
| 8/29/2018 | BO | 60 | AAPL Sep 7 2018 227.5 Call | 0.40 |

| | | | | |
|---|---|---|---|---|
| 8/29/2018 | SC | (22) | AAPL Sep 7 2018 227.5 Call | 0.45 |
| 8/29/2018 | BO | 30 | AAPL Sep 7 2018 227.5 Call | 0.68 |
| 8/29/2018 | SC | (30) | AAPL Sep 7 2018 227.5 Call | 0.66 |
| 8/29/2018 | SC | (38) | AAPL Sep 7 2018 227.5 Call | 0.44 |
| 8/30/2018 | BO | 100 | AAPL Jun 21 2019 230.0 Call | 16.09 |
| 8/30/2018 | SC | (200) | AAPL Jun 21 2019 230.0 Call | 17.65 |
| 8/30/2018 | BO | 40 | AAPL Sep 14 2018 230.0 Call | 0.88 |
| 8/30/2018 | SC | (40) | AAPL Sep 14 2018 230.0 Call | 1.11 |
| 8/30/2018 | BO | 1 | AAPL Sep 21 2018 240.0 Call | 0.68 |
| 8/30/2018 | BO | 30 | AAPL Sep 21 2018 240.0 Call | 0.70 |
| 8/30/2018 | BO | 20 | AAPL Sep 7 2018 230.0 Call | 1.09 |
| 8/30/2018 | SC | (20) | AAPL Sep 7 2018 230.0 Call | 1.17 |
| 8/30/2018 | BO | 40 | AAPL Sep 7 2018 232.5 Call | 0.81 |
| 8/30/2018 | SC | (40) | AAPL Sep 7 2018 232.5 Call | 0.74 |
| 8/30/2018 | BO | 40 | AAPL Sep 7 2018 232.5 Call | 0.91 |
| 8/30/2018 | SC | (10) | AAPL Sep 7 2018 232.5 Call | 1.11 |
| 8/30/2018 | SC | (30) | AAPL Sep 7 2018 232.5 Call | 1.10 |
| 8/30/2018 | BO | 60 | AAPL Sep 7 2018 235.0 Call | 0.56 |
| 8/30/2018 | SC | (49) | AAPL Sep 7 2018 235.0 Call | 0.68 |
| 8/30/2018 | SC | (11) | AAPL Sep 7 2018 235.0 Call | 0.67 |
| 8/30/2018 | BO | 40 | AAPL Sep 7 2018 235.0 Call | 0.39 |
| 8/30/2018 | SC | (40) | AAPL Sep 7 2018 235.0 Call | 0.39 |
| 8/30/2018 | BO | 80 | AAPL Sep 7 2018 235.0 Call | 0.41 |
| 8/30/2018 | SC | (18) | AAPL Sep 7 2018 235.0 Call | 0.30 |
| 8/30/2018 | BO | 80 | AAPL Sep 7 2018 235.0 Call | 0.32 |
| 8/30/2018 | SC | (14) | AAPL Sep 7 2018 235.0 Call | 0.31 |
| 8/30/2018 | SC | (37) | AAPL Sep 7 2018 235.0 Call | 0.34 |
| 8/30/2018 | SC | (11) | AAPL Sep 7 2018 235.0 Call | 0.32 |
| 8/31/2018 | BO | 100 | AAPL Jun 21 2019 235.0 Call | 17.15 |
| 8/31/2018 | SC | (31) | AAPL Sep 21 2018 240.0 Call | 1.25 |
| 8/31/2018 | SC | (67) | AAPL Sep 7 2018 235.0 Call | 0.56 |
| 8/31/2018 | SC | (12) | AAPL Sep 7 2018 235.0 Call | 0.62 |
| 8/31/2018 | SC | (1) | AAPL Sep 7 2018 235.0 Call | 0.54 |
| 9/4/2018 | BO | 100 | AAPL Jun 21 2019 235.0 Call | 16.75 |
| 9/4/2018 | BO | 30 | AAPL Sep 21 2018 240.0 Call | 1.20 |
| 9/4/2018 | SC | (30) | AAPL Sep 21 2018 240.0 Call | 1.30 |
| 9/4/2018 | BO | 100 | AAPL Sep 7 2018 232.5 Call | 0.63 |
| 9/5/2018 | SC | (100) | AAPL Sep 7 2018 232.5 Call | 0.82 |
| 9/6/2018 | BO | 30 | AAPL Jan 18 2019 230.0 Call | 10.99 |
| 9/6/2018 | BO | 5 | AAPL Jan 18 2019 230.0 Call | 10.80 |
| 9/6/2018 | BO | 10 | AAPL Jan 18 2019 230.0 Call | 11.35 |
| 9/14/2018 | BO | 30 | AAPL Sep 21 2018 235.0 Call | 0.49 |
| 9/18/2018 | SC | (30) | AAPL Sep 21 2018 235.0 Call | 0.02 |
| 10/4/2018 | BO | 170 | AAPL Oct 19 2018 245.0 Call | 0.22 |
| 10/5/2018 | BO | 35 | AAPL Oct 19 2018 245.0 Call | 0.19 |
| 10/5/2018 | BO | 205 | AAPL Oct 19 2018 245.0 Call | 0.14 |
| 10/5/2018 | BO | 200 | AAPL Oct 19 2018 245.0 Call | 0.09 |
| 10/5/2018 | BO | 94 | AAPL Oct 19 2018 245.0 Call | 0.06 |
| 10/8/2018 | BO | 11 | AAPL Nov 16 2018 250.0 Call | 0.87 |
| 10/19/2018 | Option Expired | (704) | AAPL Oct 19 2018 245.0 Call | 0.00 |
| 11/16/2018 | Option Expired | (11) | AAPL Nov 16 2018 250.0 Call | 0.00 |