**Pages 1 - 24**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | |
|---|---|
| MICHAEL SOOKDEO, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) |
|       Plaintiff, | ) ) |
|   VS. | )   **NO. 3:25-CV-05315-JD** ) |
| HIMS & HERS HEALTH, INC., ANDREW DUDUM, and OLUYEMI OKUPE, | ) ) ) ) |
|       Defendants. | ) ) |

| | |
|---|---|
| ARA YAGHSIZIAN, individually and on behalf of all others similarly situated, | ) ) ) ) |
|       Plaintiff, | ) ) |
|   VS. | )   **NO. 3:25-CV-05321-JD** ) |
| HIMS & HERS HEALTH, INC., ANDREW DUDUM, and OLUYEMI OKUPE, | ) ) ) ) |
|       Defendants. | ) ) |

San Francisco, California
Thursday, November 20, 2025

**TRANSCRIPT OF PROCEEDINGS**

**(APPEARANCES ON FOLLOWING PAGE)**

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

**APPEARANCES**:

For Lead Plaintiff/Movant James A. Schalter:
                          ROBBINS, GELLER, RUDMAN & DOWD LLP
                          655 West Broadway, Suite 1900
                          San Diego, California 92101
                     BY:  **DARREN J. ROBBINS, ATTORNEY AT LAW**
                          **KENNETH P. DOLITSKY, ATTORNEY AT LAW**


For Lead Plaintiff/Movant Shuo-Hsien Wang:
                          SAXENA WHITE P.A.
                          10 Bank Street, Suite 882
                          White Plains, New York 10606
                     BY:  **MARCO A. DUEÑAS, ATTORNEY AT LAW**


                          SAXENA WHITE P.A.
                          505 Lomas Santa Fe Drive, Suite 180
                          Solano Beach, California 92075
                     BY:  **DAVID R. KAPLAN, ATTORNEY AT LAW**

**Thursday - November 20, 2025**                    **10:46 a.m.**

                          **P R O C E E D I N G S**

                            ---o0o---

          **THE COURTROOM DEPUTY:**  Calling Related Actions Civil 25-5315, Sookdeo versus Hims & Hers Health, Inc., and Civil 25-5321, Yaghsizian versus Hims & Hers Health, Inc.

          **THE COURT:**  Thank you.

          **THE COURTROOM DEPUTY:**  Counsel?

          **MR. ROBBINS:**  Good morning, Your Honor.  Darren Robbins of Robbins Geller Rudman & Dowd, together with my colleague Ken Dolitsky, on behalf of lead plaintiff/movant Mr. Schalter.

          **MR. DUEÑAS:**  Good morning, Your Honor.  Marco Dueñas, Saxena White, I'm joined by my colleague David Kaplan, on behalf of lead plaintiff/movant Shuo-Hsien Wang.

          **THE COURT:**  Okay.  No defendant today?  They don't care.

     All right.  You know, I just -- let me start with Mr. Wang's counsel.

          **MR. DUEÑAS:**  Certainly, Your Honor.  Thank you.

          **THE COURT:**  I just -- you know, the classes are defined as purchasers of Hims & Hers common stock or Hims securities, and your client didn't buy that.  He bought an ETF fund.  So just, I'm really kind of struggling with how he's typical and adequate.

**MR. DUEÑAS:**  Respectfully, Your Honor, we disagree completely.  Mr. Wang purchased a HIMS --

**THE COURT:**  You don't have to be respectful.  Just tell me.

**MR. DUEÑAS:**  Certainly, Your Honor.

Mr. Wang purchased a HIMS ETF, which, as Mr. Schalter concedes, is a combination of options, swaps, and Hims stock underlying that security.

30 years ago, Congress made explicitly clear in the '95 PSLRA reforms that a security like a HIMS ETF is defined as, quote, "any note, stock, treasury" --

**THE COURT:**  I know.  This is all in your papers.

**MR. DUEÑAS:**  Sure.

**THE COURT:**  We're just talking here.

Okay.  So, I mean, the prospectus from HIMZ, the ETF entity, H-I-M-Z, plainly states that it's not affiliated with the underlying security, and the classes are defined as purchasers of the underlying security.

So I'm just -- I don't see how he's typical and adequate, particularly in light of my decision in *Stitch Fix*.

**MR. DUEÑAS:**  Your Honor, the flawed point that Mr. Schalter makes in his papers is that my client is not a part of the class and lacks standing because he did not buy a security issued by Hims itself.  And the Supreme Court of the United States did away with that years ago in *Blue Chip Stamps*.

They made clear you do not have --

**THE COURT:**  I'm not focusing on --

**MR. DUEÑAS:**  -- to buy from them.

**THE COURT:**  I'm not focusing on standing.  I'm focusing on typicality and adequacy.

**MR. DUEÑAS:**  Sure.

**THE COURT:**  He's just not situated like every other member of the defined class because he did not buy that stock. He bought something that is a leveraged ETF of that stock.

**MR. DUEÑAS:**  Since Your Honor raised *Stitch Fix* --

**THE COURT:**  Yeah.

**MR. DUEÑAS:**  -- that case, Your Honor, is completely distinguishable.

In that case, three actions -- I'm sure you recall well -- were filed on behalf of purchasers of Stitch Fix stock and securities.  And on the final day of the 60-day notice period, an investor filed suit on behalf of sellers of put options and then that investor moved for lead plaintiff.  That was utter gamesmanship, Your Honor.

Here, we have a class definition that clearly includes all Hims securities.  You've got the PSLRA definition in the Exchange Act, which includes options and swaps.  You've got the Dodd-Frank reforms.  Congress made clear that derivatives are securities under the federal laws.  And then in 2022, the SEC explicitly approved single stock ETFs, like the HIMS ETF, as a

security to be sold and regulated under the federal laws.

And we cite that in our papers at --

**THE COURT:** I have no problem with any of that. I really want you to focus on what I'm saying.

I'm focusing on the class definition and the typicality and adequacy. That's all I'm looking at.

I am not saying to you -- do not be confused. I am not saying to you that the ETF thing your client bought is not a security. I'm not saying that.

**MR. DUEÑAS:** Thank you, Your Honor.

**THE COURT:** What I'm saying is it doesn't fit the allegations of this case, which are all about buying common stock directly. He didn't do that.

**MR. DUEÑAS:** No, Your Honor. The definition of this case, Your Honor, from the Sookdeo class definition, is all purchasers and acquirers of Hims securities, and that's exactly how the class was defined. That is the broadest definition of the class, which this Court should, respectfully, apply.

It's not common stock, as Mr. Schalter claims. He claims that his -- that he is more typical than Mr. Wang because he bought stock, and that's simply not true.

**THE COURT:** I read to you the statement in the HIMZ prospectus or issuing, whatever it is -- the prospectus, yeah -- this is at Docket Number 53-2 -- which says: We are not affiliated with the underlying security.

**MR. DUEÑAS:**  So that is true of any investor, Your Honor, in derivative securities that are not issued by the company.

I could make an options contract with Your Honor --

**THE COURT:**  My point --

**MR. DUEÑAS:**  -- right now on a Hims stock.

**THE COURT:**  That is my point.  He's not typical of everybody who did buy it the other way.

**MR. DUEÑAS:**  No, Your Honor.  Respectfully, if you look at the chart in our reply papers, the price and volume movements match the HIMS ETF to the stock identically.  There was massive volume in the HIMS ETF.  In fact, on the disclosure date, June 23rd of '25, for every one share of HIMS ETF that was trading, there were nine shares of Hims stock trading.

**THE COURT:**  Okay.  All right.  Would anybody like to speak on behalf of the competing lead plaintiff applicant?

**MR. ROBBINS:**  Thank you, Your Honor.

**THE COURT:**  Mr. Schalter; right?  Mr. Schalter?

**MR. ROBBINS:**  That's correct.

**THE COURT:**  Yes.  Go ahead.

**MR. ROBBINS:**  Your Honor dialed in -- Darren Robbins on behalf of Mr. Schalter.

Your Honor dialed into the issue right off the bat, and in fact, he is -- Mr. Wang is not part of the class, as Your Honor points out.  Seeking refuge in the Sookdeo complaint provides

them little help, Your Honor.

If you go through that complaint, which is -- you know, they cite to the word "securities" in paragraph 2.

**THE COURT:**  Which is in the class definition.  Your colleague -- it is in the class definition, isn't it?

**MR. ROBBINS:**  Absolutely.

And then when you go through and deal with it in context, it's very interesting, Your Honor.  Like, if you flip --

**THE COURT:**  Yes.

**MR. ROBBINS:**  -- to paragraph 13 --

**THE COURT:**  Wait one second.  Paragraph 13?

**MR. ROBBINS:**  Mm-hmm.

**THE COURT:**  Okay.

**MR. ROBBINS:**  Okay.  Then it talks about Hims common stock in paragraph 13; right?

Then we move on -- because I think context is very important.  Then we move on to paragraph 26.

**THE COURT:**  Well, 13 is just defining Hims, where it's incorporated.

**MR. ROBBINS:**  That's right, and it talks about Hims common stock.

**THE COURT:**  Okay.

**MR. ROBBINS:**  And then when we talk about market movement -- I'm going to get to the --

**THE COURT:**  All right.  Go ahead.

**MR. ROBBINS:**  Paragraph 26.

**THE COURT:**  26.

**MR. ROBBINS:**  There's no discussion in the case of anything other than the share price of Hims common stock declining upon the revelation.

And then when we get, Your Honor, to paragraph 28 -- and, again, neither --

**THE COURT:**  One second.  Let me take a look at 26.

Okay.  All right.  Share price, company share price.

What's the next one?  28?

**MR. ROBBINS:**  Yes, which is in the class action allegations.

And, again, I think it's important to note, Your Honor, that neither Mr. Wang's counsel nor my client's counsel or I filed this complaint.  So this is another set of lawyers.  So this is how they viewed the case.

And then it talks about the class allegations.  And if you look in paragraph 28, it talks about Hims shares actively trading on the New York Stock Exchange.  Millions of Hims shares were publicly traded during the class period.

So every reference -- I can go on.  Paragraph 39.

**THE COURT:**  Okay.  I see the theme.

**MR. ROBBINS:**  Yes.  And it goes on and on.

Paragraph 41, when we talk about the efficiency of the market; 41(a), we talk -- paragraph 49 is perhaps the best one,

Your Honor.

THE COURT:  49.  All right.

MR. ROBBINS:  Yes.  Purchasers of Hims securities during the class period.  This is giving you, repeatedly, what "Hims securities" means.

What they're conflating, Your Honor, is anything that is a security in the world that somehow is connected to this through these contracts that exist in this entity.  Remember, if this HIMS, which is an ETF formed by some entity called Title Investments in Wisconsin, if it brought a claim, sought to be lead plaintiff timely for the few thousand shares that it bought within this vehicle, that would be one thing.

That's not what you have here.  You have an entirely separate issuer that is the long -- you noted the name of the thing, it's a mouthful.  It's certainly not a Hims security.  It's called Defiance Daily Target 2X Long HIMS ETF.  That is the issuer.  Entirely separate.

And this was dealt with, Your Honor, just a year ago.  We noted the Ninth Circuit's decision in *Lucid* talking about something being sufficiently connected to a misrepresentation, and Judge Gonzalez Rogers dismissed a case similarly --

THE COURT:  Let me just jump in.

So your colleague says it's a difference that doesn't make any difference because the prices of the two exchanges and shares were exactly tracking; the injury to the buyers was the

same; the misrepresentations were the same.

**MR. ROBBINS:**  Can you imagine the field day the defendants would have with a lead plaintiff like that, that didn't even buy a security --

**THE COURT:**  I can, which is why I'm thinking about doing you --

**MR. ROBBINS:**  Well --

**THE COURT:**  -- on adequacy and typicality grounds, which is what you're arguing.

**MR. ROBBINS:**  Yes.  And it goes on.

You know, you have someone here who has a loss from purchasing the security issued by the company, has experience -- you know, remember, Your Honor, in determining financial interest in the relief sought by the class, that's left to the discretion of the Court.

This gentleman, Mr. Wang, has no financial stake, and his adequacy and typicality are even more suspect.  We see in his declaration --

**THE COURT:**  No financial stake in the sense that he never bought a common share.

**MR. ROBBINS:**  That's right.

**THE COURT:**  Yes.

**MR. ROBBINS:**  And we talk about -- and each of these movants put a declaration in, Your Honor, in support of their application.

Mr. Wang lives in Taipei.  He says he'll judiciously prosecute the case.  He's paying very close attention to the case.  He's worked with his lawyers.  And then please note at paragraph 10 of his declaration, you know what he says?  He says [as read]:

"I will vigorously prosecute the *Iovance* case."

Is this *Iovance*?  It literally -- he read his declaration so closely on a preformatted declaration.  That's the indicator we get at this stage.  So not only does he have no financial interest in the relief sought by the class, but he's already shown, at this early stage, that he doesn't even read the documents that he submits to the Court.

THE COURT:  Okay.  Thank you.

MR. ROBBINS:  Thank you, Your Honor.

MR. DUEÑAS:  Your Honor, if I may, a couple of points in response.

THE COURT:  Yes.

MR. DUEÑAS:  Thank you.

The crux of the typicality analysis, Your Honor, is whether my client purchased Hims securities.  Your Honor conceded that he did buy a security.

THE COURT:  Let me just jump in.

MR. DUEÑAS:  There's a debate about --

THE COURT:  The Court does not concede anything.

MR. DUEÑAS:  Okay.

**THE COURT:** I am willing to spot, for discussion purposes only --

**MR. DUEÑAS:** Understood.

**THE COURT:** -- that it may be a security in some sense.

That has nothing to do -- if you were under the impression that I just handed you victory, you are wrong. I am much, much more concerned -- I do not care about the point of whether it is a security or not. I'm not arguing with you on that. That is a sideshow that I do not need to reach. I will just kind of -- don't need to do that. So don't think this is in any way a point in your favor.

All I'm saying is it's an irrelevant point for my purposes because regardless of what you want to say about the HIMS ETF, he is not -- Mr. Wang is not typical of the plaintiffs in this case, and you're not persuading me that that's not true.

**MR. DUEÑAS:** Your Honor, there are a couple --

**THE COURT:** Let me ask you another question.

**MR. DUEÑAS:** Of course.

**THE COURT:** Why does his declaration refer to a case that isn't this case?

**MR. DUEÑAS:** Respectfully, Your Honor, it's a typo. I take full responsibility for that.

**THE COURT:** Is it a typo? I mean --

**MR. DUEÑAS:** It's a typo, Your Honor.

**THE COURT:** What does "a typo" mean?  Is he a repeat plaintiff?  How many times has he been a securities plaintiff?

**MR. DUEÑAS:** No, Your Honor.  This plaintiff has never moved before.

**THE COURT:** Okay.  So how do you use a canned declaration in an entirely different case?  I don't know how that works.

**MR. DUEÑAS:** It was a clerical error, Your Honor, and that's what I chalk it up to.

If I may return to the facts of this case, Your Honor.

If --

**THE COURT:** Did he read it?

**MR. DUEÑAS:** He read it.  He signed it.  We discussed it.

**THE COURT:** He didn't catch it either?

**MR. DUEÑAS:** No, Your Honor.

**THE COURT:** Okay.  Just, last chance.  How is he typical and adequate?

**MR. DUEÑAS:** He's typical because he bought securities -- not issued by Hims; admittedly issued by another company, Title Investments.  That's not the test.  The test is whether it was a Hims security.

It's pegged one-to-one to the Hims stock that underlies that security like any other option or swap.  The price and volume movements match identically.

And we would ask Your Honor to grant two forms of relief in the alternative.  Either appoint our client as co-lead on behalf of the entire class of Hims securities investors, or in the alternative, appoint our client as lead for a subclass of derivative investors.

Mr. Schalter has made clear he has no interest in protecting the interests of derivative investors, like my client, and if you --

**THE COURT:**  On that point, how many do you think there are?

**MR. DUEÑAS:**  Many, Your Honor.  So if you look at the price and volume, for every one share of HIMS ETF that traded on the day of the disclosure, there were nine shares of Hims stock trading in the market.  This was highly liquid, 11 percent of the entire universe of damages.

So we're, a rough calculation, $2 1/2 billion in damages.  For HIMS ETF investors alone, we're talking about $300 million in damages.

If Your Honor declines to appoint my client at least as lead for a subclass, we'll have no choice but to consider --

**THE COURT:**  Let me pause on this.

I mean, Mr. Robbins, what do you think about a little subclass that Mr. Wang headlines?

**MR. ROBBINS:**  Well, he has every right to bring his own case.  I think under *Lucid*, he would, in all likelihood, be

subject to very severe attack by the defendants.

**THE COURT:**  No.  On this subclass that he's -- your colleague is proposing.

**MR. ROBBINS:**  My concern --

**THE COURT:**  Not as lead for everything.

Let me be clear.  I'm almost certainly going to appoint Mr. Schalter.

**MR. ROBBINS:**  Thank you, Your Honor.

**THE COURT:**  I'm still going to think about it.

But the subclass seems -- what's wrong with that?

**MR. ROBBINS:**  If Your Honor --

**THE COURT:**  You've already said it's a different vehicle; it's a different set of facts, different financial device.  I mean, why not -- you two can move in parallel. He'll just -- your colleague here will have a different class.

**MR. ROBBINS:**  As long as the class is not burdened by the challenges that they will have, which are legion, I have no issue.  Whatever Your Honor feels is most effective.

What I don't want to do --

**THE COURT:**  Let me just -- I'm not sure why there'd be any carryover to your class.  If the plaintiff -- if the defendants want to go after Mr. Wang and his class, why would that affect --

**MR. ROBBINS:**  In a separate complaint or separate -- whatever Your Honor thinks is most efficient.

**THE COURT:**  Well, we're going to consolidate.

**MR. ROBBINS:**  Okay.

**THE COURT:**  Okay?  I mean, you know.

**MR. ROBBINS:**  Yes.

**THE COURT:**  You know better than I do, this gets consolidated.  It'll be a consolidated amended complaint.  I'm just talking off the top of my head.  It's your case.  You two decide.  You're way ahead of me.

I'm sorry.  I keep calling you "your colleague."  I've forgotten your name.  Can you --

**MR. DUEÑAS:**  Marco Dueñas, Your Honor.

**THE COURT:**  Okay.  Mr. Dueñas will just -- you'll have your class, and then -- I don't know if it's technically a subclass.  It probably isn't.  I mean, a subclass suggests a relationship.  To me, this seems like two independent classes.

So Class 1 will be purchasers of the common shares, and Class 2 will be purchasers of the derivatives.  And you'll each have that portion of the case.  It'll be one complaint.

The allegations are the same; right?  I mean, the factual allegations against the issuer are the same; is that right, Mr. Dueñas?

**MR. DUEÑAS:**  The allegations are identical, Your Honor.

**THE COURT:**  They're identical.

**MR. DUEÑAS:**  The statements were only about Hims.

THE COURT: Yeah.  So I'll leave it up to you.  But subclass sounds slightly not quite right because it's not a family relationship; it's two different classes.  That's the way I would see it.

Do you agree with that, Mr. Robbins?

MR. ROBBINS: Yes.  The way you're articulating it makes sense, and we will work to make this as efficient as possible if that's what Your Honor would like.

What I see is, throughout the process of challenges to the pleadings and class certification, the thing I would worry about is being diverted for the issues that they will be subject to that we will not.  But Your Honor is well equipped to deal with that.

THE COURT: Well, let's explore that for a moment.

So, of course, there'll be a massive motion to dismiss, and I will decide which of the statements are going to go forward.  That's going to happen.  It's common cause for both of you.  So that's not going to slow you down in any way on the common shares class.

And when it gets to certification, you will each bring a separate certification motion because you have separate classes.  Okay?  And you'll be on Track 1, and you'll be on your other track, and life will go on.

Now, in both cases, I guarantee you, the defendant is going to say you can't be certified, all for the same reasons,

you know, this, that, and the other thing.  We'll work it through.

But I am not seeing a likelihood that you're going to be penalized substantially in any way, Mr. Robbins.

**MR. ROBBINS:**  As long as the subjective judgments about the formulation and articulation of the complaint, which I would be protective of, is vested with us, we will make --

**THE COURT:**  I'm going to let you two -- as experienced securities lawyers on the same side of the V, you two work out how you're going to do that.

Mr. Dueñas, are you going to be able to handle all this?  Does it make sense to you?

**MR. DUEÑAS:**  Absolutely, Your Honor.  My only concern and request of the Court is that there be one consolidated amended complaint --

**THE COURT:**  Yes.

**MR. DUEÑAS:**  -- as my colleague suggests, which hints at not two separate cases proceeding in two parallel tracks but a subclass of investors in Hims securities, Your Honor.

**THE COURT:**  I'm still pushing back on subclass.  It has to be the same because your allegations are all the same.  Okay?

**MR. DUEÑAS:**  Yes.

**THE COURT:**  I don't want two complaints that are 99 percent identical except for the description of who the

plaintiffs are.  That's what I don't want.

MR. DUEÑAS:  And --

THE COURT:  So you work -- you get one thing done. You work out how you do it.  Okay?  I mean, it's Robbins Geller for a reason.  So you guys work out how you do it, and I'm going to rely on your good graces for that.  And I know you've done it a million times.  I know Mr. Robbins has, and you probably have too, although not --

MR. DUEÑAS:  Thank you, Your Honor.

THE COURT:  You haven't been on the track as long as he has, but I get it.

MR. DUEÑAS:  Fast on his heels, Your Honor.

THE COURT:  So let's do that.  How about that?  Okay? Can we just do that?

MR. DUEÑAS:  That sounds good.

THE COURT:  So let's just do it now.  I'll make Mr. Schalter the lead on the common shares class; Mr. Wang -- "WANG" or "WONG"?

MR. DUEÑAS:  "WONG" --

THE COURT:  "WONG"?

MR. DUEÑAS:  -- on behalf of derivatives, please.

THE COURT:  On behalf of derivatives.  It'll be one consolidated complaint, you'll both be appointed class counsel, and life will be good.

Does that sound all right?

**MR. DUEÑAS:**  Thank you, Your Honor.

**THE COURT:**  Good?

**MR. DUEÑAS:**  Yes.

**THE COURT:**  Everybody good?  Mr. Robbins?

**MR. ROBBINS:**  Both appointed.

When we move for class certification, we would seek separate classes; correct?

**THE COURT:**  Separate classes.

**MR. ROBBINS:**  Okay.

**THE COURT:**  And you're going to brief only the common shareholders, and Mr. Dueñas is going to brief only the derivatives.  You won't even -- it's as if you're not even on the same planet.  You will be blind to each other on terms of class certification.

Now, maybe I might certify his class and not yours.  I might certify no class.  I might certify both.  I don't know.

**MR. ROBBINS:**  Understood.

**THE COURT:**  But you're going to be non-over- -- Venn diagram, non-overlapping circles.

**MR. ROBBINS:**  Understood, Your Honor.

**THE COURT:**  Okay.  Now, if I come --

**MR. DUEÑAS:**  Your Honor --

**THE COURT:**  -- to regret this at any point, I will change everything; but --

**MR. DUEÑAS:**  No.

**THE COURT:** -- right now, that's the way I see it.

Yes, go ahead.

**MR. DUEÑAS:** Just one point of clarification.

Your Honor asked that the Robbins firm represent common stock shareholders.

**THE COURT:** Yes.

**MR. DUEÑAS:** And my client will be representing --

**THE COURT:** Derivative.

**MR. DUEÑAS:** -- the derivatives.

That leaves a whole swath of other securities.  And I just wanted clarification.  Bonds, for example, debt, hybrid equity securities, who's going to be representing that, or would we be co-lead for that?

**THE COURT:** Nobody said anything about that so far.

**MR. DUEÑAS:** Okay.  Thank you, Your Honor. Understood.

**THE COURT:** I feel like you're setting a trap for me. I don't know anything about this.  I'm not taking any position.

**MR. DUEÑAS:** Okay.

**THE COURT:** I'm only going to do what you tell me. Okay?  Don't go running somewhere and say, "The judge said no debt holders can sue."  I'm not saying that.

**MR. DUEÑAS:** Okay.

**THE COURT:** All right?

**MR. ROBBINS:** Thank you, Your Honor.

THE COURT:  Okay?

MR. DUEÑAS:  Understood.  Thank you, Your Honor.

THE COURT:  All right.  Thanks for coming in.

Oh, I'm sorry.  How long would you like for the consolidated complaint?

MR. ROBBINS:  So if it's okay with you, can we -- we would like 45 days, but can we --

THE COURT:  Take 60.  It's the holidays.

MR. ROBBINS:  Okay.

THE COURT:  Do you want to do 60?

MR. ROBBINS:  Thank you, Your Honor.  That would be great.

THE COURT:  You want a date in January?  Like what? January -- end of January?

MR. ROBBINS:  Yeah.  January 20th.  January -- whatever works with the Court's calendar.

THE COURT:  Who's doing Hims & Hers?

MR. ROBBINS:  Yeah.

THE COURT:  They haven't hired anybody?

MR. ROBBINS:  They have.  They have.

MR. DUEÑAS:  Who made an appearance?

MR. ROBBINS:  They sit back, as you know, Your Honor, until --

THE COURT:  They usually actually like to come and watch the show.

**MR. ROBBINS:** Watch, yes. It's a free show, and typically, they do.

Do you have -- I don't recall who appeared. Somebody has appeared.

**THE COURT:** Do you know, Mr. Dueñas?

**MR. DUEÑAS:** I don't have defense counsel's name off the top of my head, no, Your Honor.

**THE COURT:** So --

**MR. DUEÑAS:** I can check.

**THE COURT:** But they have someone? You just --

**MR. DUEÑAS:** Yes. They have appeared, Your Honor, yes.

**THE COURT:** All right. Oh, they have appeared?

**MR. DUEÑAS:** Yes.

**MR. ROBBINS:** Yes.

**THE COURT:** All right. So you can share the good news with them. It'll all be filed in an order. And I'll just pick a date in late January. Okay?

All right. Thanks so much for coming in.

**MR. DUEÑAS:** Thank you, Your Honor.

**MR. ROBBINS:** Thank you, Your Honor.

(Proceedings adjourned at 11:10 a.m.)

---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Tuesday, November 25, 2025

_Ana Dub_

_____

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official United States Reporter